644 A.2d 227

**NORTH HUNTINGDON TOWNSHIP and Old Republic Insurance Company, Petitioners,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (NOBLE), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 18, 1994.

Decided June 14, 1994.

Petition for Allowance of Appeal Denied Nov. 10, 1994.

34

Richard L. Rosenzweig, for petitioners.

Joseph E. Fieschko, Jr., for respondent.

Before DOYLE and NEWMAN, JJ., and SILVESTRI, Senior Judge.

DOYLE, Judge.

North Huntingdon Township Police Department (Police Department or Employer) appeals an order of the Workmen's Compensation Appeal Board which, affirming the decision of the worker's compensation judge, granted Dora Noble (Claimant) compensation for a job-related psychiatric injury under

Section 301(c) of The Pennsylvania Workmen's Compensation Act.[1]

The relevant facts are as follows. Claimant worked for the Police Department as a civilian police dispatcher for ten and one-half years and her job duties included answering the telephone, dispatching emergency personnel, and performing general office work. In 1988 and 1989 a grand jury investigation of various police officers, including the chief of police, was begun regarding allegations of ticket fixing. As a result of the investigation, the police chief and one police officer were charged with these violations and the chief of police was suspended in May of 1990 and eventually dismissed. It is undisputed that Claimant was never a subject of the grand jury investigation nor was she ever even questioned by the grand jury.

On April 8, 1991, Claimant filed a claim petition against the Employer alleging that she became disabled on March 13, 1991, as a result of a mental disability and depression, caused by the stress of her job. After several hearings, the referee made certain critical findings of fact as follows:

> *EIGHTH:* This Referee finds based on the credible testimony of the claimant and the acting police chief that the claimant's job duties were not changed as a result of the grand jury investigation.

> *NINTH:* This Referee finds based on the credible testimony of the claimant and Carl F. Kuzel that the grand jury investigation demoralized the police department and divided the police department into two camps critical of one another. This Referee also finds based on the credible testimony of the claimant that the claimant was upset because her work friends were under investigation and because the claimant "wanted to stay out of it." This Referee finds the grand jury investigation of the police department as well as the demoralized atmosphere caused by the investigation to be abnormal working conditions....

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 411.

***TENTH:*** This Referee finds based on the credible testimony of Dr. Glanz that the claimant became unable to perform her pre-injury job as dispatcher on March 13, 1991, due to depression which was substantially contributed to by the working conditions (chaos) caused by the grand jury investigation.

Based on these findings, the referee concluded that Claimant had sustained her burden of proof establishing a work-related disability by demonstrating that, as a result of her depression caused by abnormal working conditions, she became disabled on March 13, 1991. Employer appealed to the Board which affirmed the referee. Employer now appeals to this Court.

On appeal, Employer contends that Claimant failed to show that her depression was caused by an abnormal working condition. We agree.

In a case involving a psychological stimulus causing a mental injury (mental-mental), the work-related stress must be caused by actual objective abnormal working conditions, as opposed to subjective, perceived or imagined employment events. *Martin v. Ketchum, Inc.,* 523 Pa. 509, 568 A.2d 159 (1990). The degree of proof demanded of a claimant in such cases is high, *Hammerle v. Workmen's Compensation Appeal Board (Department of Agriculture, Bureau of Dog Law Enforcement),* 88 Pa.Commonwealth Ct. 486, 490 A.2d 494 (1985), and for objective employment events to be considered abnormal, they must be considered in relation to the specific employment. *Williams v. Workmen's Compensation Appeal Board (Philadelphia National Bank),* 120 Pa.Commonwealth Ct. 551, 548 A.2d 1344 (1988). When, as here, there is no physical injury as precursor to the psychic injury, the claimant must prove either (a) that actual extraordinary events occurred at work which caused the trauma and that these specific events can be pinpointed in time or (b) that abnormal working conditions over a longer period of time caused the psychic injury. *Marsico v. Workmen's Compensation Appeal Board (Department of Revenue),* 138 Pa.Commonwealth Ct. 352, 588 A.2d 984 (1991).

■ In this case, while Claimant presented objective evidence of a mental injury, *i.e.*, depression, which was accepted by the referee, in order for her injury to be compensable, she must still establish that the event which allegedly caused her injury, *i.e.*, the grand jury investigation of the police department, constituted an abnormal working condition and the question of what constitutes an abnormal working condition is a mixed question of law and fact and is reviewable by this Court. *Jeanes Hospital v. Workmen's Compensation Appeal Board (Miller)*, 141 Pa.Commonwealth Ct. 308, 595 A.2d 725 (1991), *petition for allowance of appeal denied*, 532 Pa. 648, 614 A.2d 1144 (1992).

■ We hold that a grand jury investigation into a police *department* is not an abnormal working condition for a civilian police dispatcher, who is neither the focus of the investigation nor the subject of questioning.

A grand jury proceeding is an ex parte investigation to determine whether probable cause exists to institute criminal proceedings against a person. Historically, the grand jury was established to protect people against unfounded governmental prosecution, *United States v. Vetere*, 663 F.Supp. 381, 386 (S.D.N.Y.1987), and its purpose is to prevent a prosecutor from subjecting innocent people to the trauma of trial. *See United States v. Thomas*, 788 F.2d 1250, 1254 (7th Cir.), *cert. denied*, 479 U.S. 853, 107 S.Ct. 187, 93 L.Ed.2d 121 (1986). Our Pennsylvania Supreme Court has stated that "[b]ecause of the method by which its deliberations are conducted and the secrecy surrounding them, *[the grand jury] is a particularly suitable body to investigate misconduct of public officials and public evils.*" *McNair's Petition*, 324 Pa. 48, 57, 187 A. 498, 503 (1936) (emphasis added).

Thus, while unusual in the sense that a grand jury investigation is not an everyday occurrence, it is not such an extraordinary event so as to constitute an abnormal working condition in this case. The grand jury serves an important role in our overall governmental structure and, as recognized by our Supreme Court in *McNair*, it is the grand jury which is the

particularly suitable body to investigate public misconduct such as was allegedly involved in this matter. By its very nature, the grand jury is the normal procedure used to investigate public misconduct and no evidence was presented here which would indicate that the investigation was conducted improperly or was directed arbitrarily at certain individuals within the police force. Furthermore, the record clearly establishes that Claimant herself was never under any suspicion, never investigated, never called to testify and never charged with any impropriety. Therefore, the grand jury investigation and the subsequent presence of a generalized "demoralized atmosphere" within the police department does not constitute such an abnormal working condition, for this *claimant,* for which compensation would be awarded.

 Even assuming that a grand jury investigation generally could be an abnormal working condition, Claimant never indicated how the grand jury investigation here affected her specific employment, that of a civilian police dispatcher, so as to cause her depression. Claimant testified that the grand jury investigation had no effect on her ability to answer calls and dispatch help and that her work hours were not excessive or unusual for a full-time dispatcher and that she always had the option of refusing to work overtime. In fact, the referee found that Claimant's job duties were not changed as a result of the grand jury investigation and no testimony was presented by Claimant which showed that other police dispatchers experienced job difficulties as a result of the investigation. Claimant stated that the main reason why she was upset was because she was "bothered" by the fact that certain police officers, whom she considered her friends, were investigated and later arrested. Thus, Claimant's depression stemmed, not from the character of her work, but from subjective personal friendships with other people. Claimant faced the same job difficulties as any other police dispatcher who worked for the police department at that time.

Officer Kuzel's testimony, which Claimant presented as corroborating evidence, fails to establish causation for the same reason. Officer Kuzel, a patrolman with the police

department from 1987 to March, 1990, described Claimant's job duties and stated that he was familiar with the demands made on a dispatcher. Kuzel stated that the job of a police dispatcher normally involves a great deal of stress but it was his opinion that there were enough dispatchers to handle the incoming calls and that the character of the calls or the demands of the dispatchers' jobs did not change during the grand jury activities. Kuzel was also unable to state whether any derogatory comments were ever made directly to Claimant.

▇ Thus, Claimant presented no evidence to show how the investigation had any direct effect on her job responsibilities and she failed to show that she suffered from anything other than a subjective reaction to being concerned about an investigation into the criminal activity of some of her personal friends who were her co-workers.[2]

Accordingly, the Board's order is reversed.

2. Claimant's medical expert, Dr. Glanz, examined her in September 1990 and at that time diagnosed Claimant as having a generalized anxiety disorder. Dr. Glanz changed his diagnosis, based on a phone call from Claimant, in the Spring of 1991.

Q. Her condition changed from one of anxiety in the fall of 1990 to what you have characterized as a major depression in the spring of 1991. Was this depression related to her job in any way or the things that were going on in her work?

A. I believe it was a cumulative effect; that the depression she experienced was the result of the continuing stress that she was unable to cope with, and that it just eventually led to her not being able to perform. She just had nothing left to give.

Deposition of Dr. Glanz at 17–18.

However, upon cross-examination, Dr. Glanz stated:

Q. In your therapy sessions, did you get into enough depth to form any opinions as to the root of her anxiety or her depression?

A. There really wasn't enough time.

. . . .

Q. *Now, assuming you were able to make this diagnosis of major depression by either seeing her, talking to her on the phone, you really can't connect this causally with the work that she was doing back in October–September of 1990, can you?*

A. *Again, I can't be overly simplistic about it. I can say with some degree of certainty that it was a contributing factor. I can't say that it was causal. And I can only say that it was a contributing factor.*

Id. at 36 and 40 (emphasis added).

## *ORDER*

NOW, June 14, 1994, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby reversed.

In cases of this nature, unequivocal medical testimony is required to establish a causal connection between the injury and the employment. *Andracki v. Workmen's Compensation Appeal Board (Allied Eastern States Maintenance)*, 96 Pa.Commonwealth Ct. 613, 508 A.2d 624 (1986). Here, Dr. Glanz's testimony does not support Claimant's allegation that her depression was caused by her employment. Hence, Claimant did not sustain her burden of proving a causal connection between her depression and her employment.