

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-31-1996

# Dici v. Comm of PA

Precedential or Non-Precedential:

Docket 95-3579

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Dici v. Comm of PA" (1996). *1996 Decisions.* Paper 140.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/140

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 95-3579
_____


JUDITH S. DICI,
            Appellant,

v.

COMMONWEALTH OF PENNSYLVANIA;
PENNSYLVANIA STATE POLICE BUREAU
OF LIQUOR CONTROL ENFORCEMENT;
FRANK H. MONACO; STEVEN B. BRISON

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(Civil Action No. 93-1845)
_____

Argued May 23, 1996

Before SLOVITER, Chief Judge, SAROKIN and OAKES,
            Circuit Judges


(Filed July 31, 1996)

_____

            Andrew L. Levy, Esq. (argued)
            Dara A. DeCourcy, Esq.
            Zimmer Kunz, P.C.
            Pittsburgh, PA 15219
                Attorneys for Appellant

            Thomas W. Corbett, Jr.
             Attorney General

            Gloria A. Tischuk (argued)
             Deputy Attorney General
            Calvin R. Koons
             Senior Deputy Attorney General
            John G. Knorr, III
             Chief Deputy Attorney General

Pittsburgh, PA 15219
        Attorneys for Appellees
        Commonwealth of Pennsylvania,
        Pennsylvania State Police, Bureau
        of Liquor Enforcement and Frank H.
        Monaco
Bryan Campbell, Esq. (argued)
Shelly Bould Campbell, Esq.
Pittsburgh, PA 15219
        Attorneys for Appellee Steven
        Brison

_____

OPINION OF THE COURT
_____


OAKES, Senior Circuit Judge:

Judith S. Dici ("Dici") appeals from a summary judgment entered on September 27, 1995, by the United States District Court for the Western District of Pennsylvania in favor of Appellees Commonwealth of Pennsylvania, Pennsylvania State Police, Bureau of Liquor Enforcement, Frank H. Monaco ("Monaco"), and Steven Brison ("Brison"). Dici sought monetary and injunctive relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq. (1994), and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. Ann. 951 et seq. (1991 & Supp. 1994) ("PHRA"), for several alleged incidents of sexual harassment and racial bias. On appeal, Dici contends that the district court erred in finding her claims precluded by a previous state workmen's compensation determination arising out of many of the same incidents alleged by Dici in this case. Dici further claims that genuine issues of material fact prevent entry of summary judgment in favor of the Appellees. For the reasons stated below, we affirm in part, reverse in part, and remand.

BACKGROUND

Dici began working as a liquor enforcement officer for the Commonwealth of Pennsylvania on October 19, 1975. In 1978, Dici became an employee of the Pennsylvania State Police when it assumed the responsibilities of the Bureau of Liquor Enforcement. Dici's duties included conducting undercover investigations of premises licensed by the Commonwealth for violations of the liquor law and patrolling for underage drinkers. In 1989 and 1990, Dici taught driver training to Liquor Control Enforcement cadets at the State Police Academy. Appellee Brison was also a liquor enforcement officer during the time period at issue. Appellee Monaco supervised Dici during her employment with the State Police.

Dici claims that on August 26, 1990, she became physically ill and totally disabled as a result of the Appellees' conduct. On June 14, 1991, Dici sought state workmen's compensation for the mental and physical disorders she alleged to have suffered as a result of sexual and racial harassment on the job. In both the

case presently before us and the state workmen's compensation proceeding, Dici alleged the following incidents of harassment and bias:

(1) In November 1988, at a graduation party for transitional training, fellow employee Jerome Farmer, who dated Dici in the past, said to Dici "Why don't you and I get together and I'll show you just how much I like you." Dici walked away and reported the incident the next day. Farmer denied the incident occurred.

(2) In August 1989, Farmer said to Dici, "Jude, we'll get together and I'm sure we can work something out." Dici declined, and later reported the incident to Monaco. Monaco informed her that she could not directly contact the Affirmative Action Officer (whose duties included handling reports of sexual harassment). Monaco claimed that when he later learned that officers could contact the Affirmative Action Officer directly, he went to Dici and told her of the mistake. Dici claimed Monaco never approached her with the information. Farmer denied the incident occurred.

(3) Dici inquired of Monaco about teaching a public speaking class in Harrisburg. Monaco, who knew that Dici had also applied for an auditing position in Harrisburg, said, "Harrisburg, where you want to be." Dici interpreted this statement to be a comment on her dating relationship with Captain Clanaghan, a black officer stationed in Harrisburg. Monaco denied the statement was made.

(4) On April 15, 1989 (a weekend day), two officers took Dici into the men's bathroom at the district office and showed her a drawing of a nude woman kneeling down and leaning forward with her mouth open. Dici's name was scrawled above the drawing. Dici complained to Monaco the following Monday. Dici claimed Monaco told her that the drawing was flattering and there was nothing he could do about the drawing because the bathroom was public. Monaco claimed never to have made such a statement and notes that the drawing was removed on that Monday. Other witnesses stated that the drawing had been on the wall since 1987 and only recently had been modified to include Dici's name.

(5) In September or October 1989, Dici was a driving instructor for Brison, an officer trainee at the time. Brison told Dici that he did not like being taught how to drive by a woman.

(6) In April 1990, when Brison and Dici were on patrol for underage drinkers, Brison told Dici that "the only [underage drinker] you would catch would be one with a

broken leg."

(7) In July 1990, Dici approached Brison to attempt to reconcile their differences. Brison told Dici that women did not belong in law enforcement.

(8) On July 20, 1990, while on patrol, Brison said to Dici, "a lot of good you would try to be if they run away." Dici responded, "I've got a lot of patience but it's wearing thin, maybe your ego needs its ass kicked." Brison replied, "who higher up in the department do you have in mind to do it for you?" Dici said, "no one, I'd try it myself."

(9) On July 29, 1990, Dici was informed by another officer that Brison had made negative racial comments about a black trainee under Dici's supervision.

(10) Dici claimed to have heard about, but not seen, a family photograph brought into the office by Brison depicting Ku Klux Klan members in full regalia.

The workmen's compensation referee found against Dici. The referee, after hearing many witnesses from both parties over several days, determined that Farmer's testimony was credible, and that the first and second incident listed above did not occur. The referee also found the following: (1) that Monaco's testimony was credible and that the comments attributed to him by Dici did not occur as related by Dici; (2) that the incident of the drawing on the bathroom wall had occurred, but that the drawing had been promptly removed when Dici brought it to Monaco's attention; (3) that Brison's racial remarks and the display of the Ku Klux Klan photo of Brison's family were not directed toward Dici; and (4) that Brison had made the statements alleged by Dici in the fifth, sixth, and eighth incidents listed above, but that these statements had occurred sporadically. The referee also noted that Brison had been reprimanded for these comments as well as for his negative racial remarks.

On the basis of these factual findings, the referee determined that Dici had not been harassed or subjected to an abnormal working environment, and thus could not recover workmen's compensation benefits. The Workmen's Compensation Appeal Board denied Dici's appeal on September 13, 1994, and the Pennsylvania Commonwealth Court affirmed the Board on August 3, 1995. The Supreme Court of Pennsylvania denied Dici's Petition for Allowance of Appeal on April 11, 1996.

Dici filed a federal complaint on November 5, 1993. In addition to the incidents detailed above, Dici claimed the following episodes of bias occurred:

(1) In October 1989, Monaco refused to assign Dici to a temporary supervisory position and instead assigned a male employee with fewer years of experience to the position.

(2) In May 1990, Dici's vacation leave was twice

cancelled by Monaco for invalid reasons.

(3)  On numerous occasions, Dici would work several days in a row but then be refused long weekends that were regularly granted to other officers.

(4)  On many occasions, Monaco refused to allow Dici to attend training classes though he allowed male officers to attend.

(5)  Monaco and several other male employees placed depictions of scantily clad women on the walls and desks of the office.

(6)  On several occasions, male officers referred to Dici by various degrading terms and made improper remarks regarding her relationship with Captain Clanaghan and her friendship with other black officers.

In her first claim for relief, Dici asserted that the Appellees' behavior discriminated against Dici based upon sex and racial affiliation in violation of Title VII.  In her second claim for relief, Dici asserted that this same behavior violated the PHRA.  Following discovery, the Appellees moved for summary judgment.  The district court referred the case to a United States Magistrate Judge for a Report and Recommendation in accordance with the Magistrates Act, 28 U.S.C.   636(b)(1)(A) and (B) (1994), and Rules 72.1.3 and 72.1.4 of the Western District of Pennsylvania Local Rules for Magistrates.  The magistrate judge recommended that summary judgment be granted to the Appellees, stating that "both counts of Dici's Complaint are based upon the exact allegations of her workmen's compensation claim: viz., that she had experienced harassment which was the result of discrimination which was based upon her gender and her association with an Afro-American State Police Captain."  The magistrate judge concluded, "[t]he Commonwealth Court's determination that Dici was not subject to harassment caused by gender and racial affiliation discrimination precludes relitigation of this issue in this court."  After hearing objections and responses from the parties, the district court adopted the magistrate judge's Report and Recommendation and granted summary judgment to the Appellees.

## DISCUSSION

Dici claims that issue preclusion should not bar this case because the standard for granting a workmen's compensation claim on the basis of emotional injury in Pennsylvania is different from the standard for recovering damages under Title VII.  Dici further claims that genuine issues of material fact prevent entry of summary judgment in favor of the Appellees.

Summary judgment is mandated when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988).  In assessing the

evidence, all factual inferences must be drawn in favor of Dici, the non-moving party. Arab African Int'l. Bank v. Epstein, 958 F.2d 532, 534 (3d Cir. 1992). A court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). On appeal, our review of the district court's grant of summary judgment in favor of the Appellees on the ground of issue preclusion is plenary. Arab African Int'l Bank, 958 F.2d at 534.

I. Issue Preclusion: "[O]nce a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Allen v. McCurry, 449 U.S. 90, 94 (1980); see also Restatement (Second) of Judgments  27 (1982). This doctrine is known as issue preclusion, or, more traditionally, as collateral estoppel. SeeMigra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 77 n.1 (1984). Issue preclusion is based upon the policy that "a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise." Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 107 (1991); see also 18 Charles A. Wright et al., Federal Practice and Procedure  4416 (1981) ("later courts should honor the first actual decision of a matter that has been actually litigated"). The doctrine of issue preclusion reduces the costs of multiple lawsuits, facilitates judicial consistency, conserves judicial resources, and "encourage[s] reliance on adjudication." Allen, 449 U.S. at 94.

A federal court examining the preclusive effect of a state court judgment must look to the Federal Full Faith and Credit Act, 28 U.S.C.  1738 (1994):

Such Acts, records and judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

Under  1738, a federal court in a Title VII action should grant preclusive effect to a state court decision upholding a state administrative agency determination when the state court's decision would be barred by issue preclusion in subsequent actions in that state's own courts. Kremer v. Chemical Const. Corp., 456 U.S. 461, 476-78 (1982).

In Kremer, the specific issue before the Court was whether a state court decision reviewing a state employment discrimination agency determination should be preclusive in a later Title VII case. Though Dici urges that we limit Kremer to cases involving state employment discrimination agencies, nothing in Kremersuggests such a narrow reading. Indeed, we have extended Kremerto state court review of agency decisions in areas other than employment discrimination. See Edmundson v. Borough of Kennett Square, 4 F.3d 186, 189-90 (3d Cir. 1993) (state court review of an unemployment compensation board decision); Rider v.

Pennsylvania, 850 F.2d 982, 994 (3d Cir.) (state court review of an arbitrator's collective bargaining agreement determination), cert. denied, 488 U.S. 993 (1988); Gregory v. Chehi, 843 F.2d 111, 121 (3d Cir. 1988) (state court review of Township Council's wrongful discharge determination).  These extensions are supported by Kremer's statement that "[n]othing in the legislative history of [Title VII] suggests that Congress considered it necessary or desirable to provide an absolute right to relitigate in federal court an issue resolved by a state court."  456 U.S. at 473.  As the Court noted, "[s]tate authorities are charged with enforcing laws, and state courts are presumed competent to interpret those laws."  Id. at 478.

     Thus, by the terms of  1738 and Kremer, the prior state workmen's compensation decision, affirmed by the Pennsylvania Commonwealth Court, may preclude Dici's Title VII action.  In order to determine whether issue preclusion applies, we must look to Pennsylvania law to discover the extent to which the workmen's compensation decision would be granted preclusive effect in a later state court proceeding.

     In Pennsylvania, issue preclusion "'forecloses re-litigation in a later action[] of an issue of fact or law which was actually litigated and which was necessary to the original judgment.'"  Hebden v. Workmen's Compensation Appeal Bd. (Bethenergy Mines, Inc.), 534 Pa. 327, 330, 632 A.2d 1302, 1304 (1993) (quoting City of Pittsburgh v. Zoning Bd. of Adjustment, 522 Pa. 44, 55, 559 A.2d 896, 901 (1989)); see also Restatement (Second) of Judgments,  27 cmt. c (1982) ("An issue on which relitigation is foreclosed may be one of evidentiary fact, of 'ultimate fact' (i.e., the application of law to fact), or of law.").  Issue preclusion is appropriately invoked if:

     (1) the issue decided in the prior adjudication was
     identical with the one presented in the later action,
     (2) there was a final judgment on the merits, (3) the
     party against whom the plea is asserted was a party or
     in privity with a party to the prior adjudication, and
     (4) the party against whom it is asserted has had a
     full and fair opportunity to litigate the issue in
     question in a prior action.

Safeguard Mut. Ins. Co. v. Williams, 463 Pa. 567, 574, 345 A.2d 664, 668 (1975) (citations omitted); Shaffer v. Smith, 673 A.2d 872, 874 (Pa. 1996).  The party asserting issue preclusion, here the Appellees, bears the burden of proving its applicability to the case at hand.  See United States v. Nicolet, Inc., 712 F. Supp. 1193, 1200 (E.D. Pa. 1989) (citing Allen v. Zurich Ins. Co., 667 F.2d 1162, 1165-66 (4th Cir. 1982) and Hernandez v. City of Los Angeles, 624 F.2d 935, 937-38 (9th Cir. 1980)).

     There can be no dispute that the second and third criteria for issue preclusion listed above have been fulfilled.  The judgment of the Commonwealth Court, affirming denial of workmen's compensation to Dici, became final in August 1995, and the Pennsylvania Supreme Court denied Dici's Petition for Allowance of Appeal in April 1996.  Also, Dici was clearly a party to the workmen's compensation proceeding.  Thus, the applicability of issue preclusion in this case depends upon the first and fourth

criteria:  whether the issues presented in the workmen's compensation proceeding are identical to those now before us, and whether Dici enjoyed a full and fair opportunity to litigate the issues in the prior proceeding.  If either criterion is not met, we will not apply issue preclusion in this case.

The district court, adopting the Magistrate's Report and Recommendation, found that "both counts of Dici's complaint are based upon the exact allegations of her workmen's compensation claim . . . . [t]he Commonwealth Court's determination that Dici was not subject to harassment caused by gender and racial affiliation discrimination precludes relitigation of this issue in this court."  We disagree with the conclusion of the district court and find that the legal issues presented in the Pennsylvania workmen's compensation hearing were not identical to the issues of Dici's Title VII case.

Pennsylvania has adopted an objective test for determining whether a psychic injury may qualify an employee for workmen's compensation.  Philadelphia Newspapers, Inc. v. Workmen's Compensation Appeal Bd. (Guaracino), 675 A.2d 1213, 1215 (Pa. 1996).  When, as in Dici's case, no physical injury triggers the psychic injury,

> the claimant must prove either (a) that actual
> extraordinary events occurred at work which caused the
> trauma and that these specific events can be pinpointed
> in time or (b) that abnormal working conditions over a
> longer period of time caused the psychic injury.

North Huntingdon Township v. Workmen's Compensation Appeal Bd. (Noble), 165 Pa. Commw. 33, 37, 644 A.2d 227, 229, appeal denied, 539 Pa. 659, 651 A.2d 545 (1994).  It appears from the workmen's compensation record that Dici proceeded under the second of these prongs, the "abnormal working conditions" theory.  The phrase "abnormal working conditions" is used by the Pennsylvania courts

> to distinguish psychiatric injuries that are
> compensable because the necessary causal relationship
> between the employment and mental disability has been
> established from those psychiatric injuries that arise
> from the employee's subjective reactions to normal
> working conditions.

Martin v. Ketchum, Inc., 523 Pa. 509, 518, 568 A.2d 159, 164 (1990).

In order to meet the objective test for abnormal working conditions, a worker must show that the employment circumstances would, by their nature, cause mental injury to one with a "healthy psyche."  Calabris v. Workmen's Compensation Appeal Bd. (American General Cos.), 141 Pa. Commw. 405, 413, 595 A.2d 765, 769 (1991); see also Marsico v. Workmen's Compensation Appeal Bd. (Dept. of Revenue), 138 Pa. Commw. 352, 359, 588 A.2d 984, 987–88 (1991) (no compensation for a psychic injury arising from harassment unless the alleged harassment qualifies as "abnormal working conditions").  Under the Pennsylvania workmen's compensation scheme, then, Dici was required to show that the harassment she suffered was conduct that would cause mental injury in an average worker with a "healthy psyche."

By contrast, in order to recover under Title VII, a worker

need not demonstrate that the conduct alleged caused a tangible psychological injury.  Harris v. Forklift Systems, Inc., __ U.S. __, 114 S. Ct. 367, 370 (1993).  In Harris, the Court reversed a lower court's decision that Harris could not recover Title VII damages.  The lower court had found that the conduct Harris alleged "was not so severe as to be expected to seriously affect plaintiff's psychological well-being."  Id. at 371.  Reversing, the Court held that

> [c]ertainly Title VII bars conduct that would seriously
> affect a reasonable person's psychological well-being,
> but the statute is not limited to such conduct.  So
> long as the environment would reasonably be perceived,
> and is perceived, as hostile or abusive, there is no
> need for it also to be psychologically injurious.

Id. (emphasis added) (citing Meritor Savings Bank v. Vinson, 477 U.S. 57, 67 (1986)).

Thus, the legal issues in Dici's workmen's compensation proceeding are not identical to those in the Title VII context.  In the Pennsylvania workmen's compensation framework, "harassment" and "abnormal working conditions" are defined in terms of objective mental injury; in the Title VII context, psychological injury is not required.  We therefore find that issue preclusion cannot apply to the legal questions presented in Dici's case.

Though the legal issues are distinct, many of the factual allegations in the workmen's compensation proceeding and this case are identical.  The workmen's compensation referee credited as true only a few of the incidents alleged by Dici, and found as a matter of fact that the remainder had not occurred, or had not occurred as Dici alleged.  Mindful that preclusion may apply to both legal and factual issues, Hebden, 534 Pa. at 330, 632 A.2d at 1304; Restatement (Second) of Judgments  27 cmt. c (1982), we must consider whether Dici may relitigate in federal court those factual issues already determined not credible by the workmen's compensation referee.  Reviewing Pennsylvania law, we believe that a Pennsylvania court would not apply issue preclusion to the facts of Dici's case.

In Odgers v. Commonwealth Unemployment Compensation Board of Review, 514 Pa. 378, 525 A.2d 359 (1987), the Pennsylvania Supreme Court refused to grant preclusive effect to an earlier Commonwealth Court ruling.  In the first action, the Commonwealth Court found that the school district employees' work stoppage was a strike within the meaning of the Pennsylvania Public Employee Relations Act ("PERA").  When individual employees later applied for unemployment compensation, the Unemployment Compensation Board of Review determined that the Commonwealth Court's characterization of the work stoppage as a strike precluded the employees from relitigating the nature of the work stoppage under Pennsylvania's unemployment compensation laws.

The Pennsylvania Supreme Court reversed the Board's finding, however, holding that the PERA issue before the Commonwealth Court was not identical to the issue presented in the unemployment compensation proceeding.  As the court stated, PERA and the unemployment compensation laws "embody different policies

and involve different rights."  Id. at 389, 364.  Subsequent to Odgers, several other Pennsylvania cases have denied preclusive effect to both the facts and law of an earlier judgment when the policies and procedures applicable to the first action were different from those of the later action.  See Verbilla v. Workmen's Compensation Appeal Bd. (Schuylkill Nursing Ass'n), 668 A.2d 601 (Pa. Commw. Ct. 1995) (unemployment compensation referee's factual findings that hospital worker was not abused by patient did not preclude later workmen's compensation proceeding regarding whether worker was injured in the course of employment because the policies and procedures of the two legal schemes were not similar); Johnsonbaugh v. Department of Pub. Welfare, 665 A.2d 20 (Pa. Commw. Ct. 1995) (unemployment compensation hearing determination that worker did not engage in willful misconduct did not preclude later Civil Service Commission decision regarding whether the employer dismissed the worker for just cause because the two issues were distinct as were the policies of the two legal schemes); Bortz v. Workmen's Compensation Appeal Bd. (Renzor Div. of FL Indus.), 656 A.2d 554 (Pa. Commw. Ct.) (unemployment compensation finding regarding willful misconduct not preclusive in later workmen's compensation hearing regarding unsatisfactory job performance because the issues and the procedures in the two proceedings were distinct), appeal granted, 542 Pa. 675, 668 A.2d 1137 (1995).

The Appellees contend that Odgers and its progeny apply only to issue preclusion decisions in cases involving two agency determinations, rather than to cases involving an earlier agency determination and a later civil suit.  We do not find merit in this argument.  Nothing in Odgers purports to limit its effect to cases involving preclusion between agencies.  Indeed, the rationale behind Odgers is as applicable to agency/civil suit preclusion as it is to agency/agency preclusion.  We have recognized this by applying the principles of Odgers to cases where preclusion was asserted between an earlier state agency determination and a later federal civil action.  See Swineford v. Snyder County Pennsylvania, 15 F.3d 1258 (3d Cir. 1994) (unemployment compensation hearing findings not preclusive in a later  1983 action); Kelley v. TYK Refractories Co., 860 F.2d 1188 (3d Cir. 1988) (factual findings of unemployment compensation hearing not preclusive in later  1981 suit); Tukesbrey v. Midwest Transit, Inc., 822 F. Supp. 1192 (W.D. Pa. 1993) (unemployment compensation hearing determination regarding wrongful misconduct not preclusive in a later Veteran's Reemployment Rights Act case regarding just termination).

As we stated in Swineford, "[u]nder Odgers, reviewing courts must look beyond the superficial similarities between the two issues to the policies behind the two actions.  Only where the two actions promote similar policies will the two issues be identical for purposes of issue preclusion."  Swineford, 15 F.3d at 1267–68.  We believe that Pennsylvania courts would apply this reasoning to the workmen's compensation proceeding in Dici's case.  The policy of Title VII is to achieve equality of employment opportunities and remedy discrimination in the workplace.  By contrast, Pennsylvania's workmen's compensation

law is designed to define the liability of employers for injuries to employees occurring in the course of employment. Moreover, the procedures utilized in workmen's compensation proceedings differ from those employed in federal court. For example, "[n]either the board nor any of its members nor any referee shall be bound by the common law or statutory rules of evidence in conducting any hearing or investigation . . . ." 77 Pa. Cons. Stat. Ann. 834 (1991). Given this court's admonition that "[r]easonable doubt as to what was decided by a prior judgment should be resolved against using it as an estoppel," Gregory, 843 F.2d at 121 (quoting Kauffman v. Moss, 420 F.2d 1270, 1274 (3d Cir.), cert. denied, 400 U.S. 346 (1970)), we find that issue preclusion should not apply to the facts of Dici's case.

In holding that the law and facts of Dici's case are not precluded, we do not mean to imply that a Pennsylvania workmen's compensation determination should never be given preclusive effect in a later suit. Indeed, in many cases preclusion has been found appropriate. For example, in Capobianchi v. Bic Corp., 666 A.2d 344 (Pa. Super. Ct.), appeal denied, 674 A.2d 1065 (1995), the court determined that a workmen's compensation hearing determination regarding the cause of the worker's injury should be given preclusive effect in a later products liability action. The court found that the issues presented in both proceedings, viz., whether the worker's neck injury was caused by a degenerative condition or by an exploding Bic lighter, were identical. Id. at 349. See also Phillips v. A.P. Green Refractories Co., 630 A.2d 874 (Pa. Super. Ct. 1993) (workmen's compensation decision that worker did not suffer silicosis preclusive in later products liability suit), aff'd, 542 Pa. 124, 665 A.2d 1167 (1994); Grant v. GAF Corp., 608 A.2d 1047 (Pa. Super. Ct. 1992) (workmen's compensation finding that worker's cancer was not caused by asbestos in the workplace preclusive in later products liability case), aff'd, 536 Pa. 429, 639 A.2d 1170 (1994). As the Grant court found, "proximate cause in a personal injury tort action and causal connection in workmen's compensation cases are analogous principles." Id. at 1057. These cases demonstrate that when the issues presented are the same, Pennsylvania courts will not hesitate to grant preclusive effect to workmen's compensation proceedings.

As is evident from a review of Dici's case, however, the issues presented in this Title VII case are different from those of the workmen's compensation proceeding. The differences are highlighted when one examines the distinct policies underlying each legal regime. Therefore, it would be inappropriate to apply issue preclusion to this case. We reverse the district court's grant of summary judgment to the Appellees on this basis.

II. Other Grounds for Summary Judgment: The Appellees moved for summary judgment both on the ground of issue preclusion and on the merits. Brison moved for summary judgment for the additional reason that an individual co-employee cannot be held liable under Title VII. On appeal, Dici claims that if issue preclusion does not bar her case, genuine issues of material fact exist precluding summary judgment. The district court, having found that issue preclusion applied, did not address the other grounds

for summary judgment offered by the Appellees. Though our review of a summary judgment motion is plenary, we think that the district court is in the better position to consider whether summary judgment is proper on the merits of this case given that issue preclusion was the focus of the briefs and arguments before us. Therefore, we believe the best course is to remand the case to the district court.

We can, however, on the record and briefs before us, decide whether Steven Brison and Frank Monaco are proper defendants to Dici's Title VII and PHRA claims. When the issue of individual liability was before this court in Sheridan v. E. I. DuPont de Nemours, 1996 W.L. 36283 (3d Cir. 1996), vacated, 74 F.3d 1439 (3d Cir. 1996), the court held that an individual employee cannot be liable under Title VII. The majority opinion written by Judge Alito noted the great weight of authority from other courts of appeals holding an employee cannot be sued under Title VII. See, e.g., Tomka v. Seiler Corp., 66 F.3d 1295, 1313 (2d Cir. 1995); Cross v. Alabama, 49 F.3d 1490, 1504 (11th Cir. 1995); Grant v. Lone Star Co., 21 F.3d 649, 653 (5th Cir. 1994); Sauers v. Salt Lake Co., 1 F.3d 1122, 1125 (10th Cir. 1993); Miller v. Maxwell Int'l Inc., 991 F.2d 583, 587 (9th Cir. 1993). Chief Judge Sloviter, who dissented in Sheridan on other grounds, commented that, although she found the reasoning of those judges who dissented from the opinions in the other circuits convincing, in light of the authority otherwise she saw no reason to dissent from the Sheridan majority on the issue of individual liability under Title VII.

The Sheridan opinion was withdrawn when the court voted to take the case en banc, and the appeal was argued before the en banc court on May 14, 1996. However, the principal focus of the en banc briefs and arguments was on Title VII issues other than individual liability. In light of this, we conclude, for the reasons previously given by the court in Sheridan and the other courts of appeals, that individual employees cannot be held liable under Title VII. Therefore, Dici cannot sustain her Title VII claims against Brison and Monaco. To this extent, then, we affirm the district court's grant of summary judgment, though on different grounds.

Dici argues that even if an individual employee cannot be liable under Title VII, the employee is still a proper defendant under the PHRA. Generally, the PHRA is applied in accordance with Title VII. Davis v. Sheraton Society Hill Hotel, 907 F. Supp. 896, 899 n.1 (E.D. Pa. 1995). Like Title VII, the definition of an employer under the PHRA cannot be construed to include "employees;" indeed, "employee" is defined as a wholly separate term under the Act. See 43 Pa. Cons. Stat. Ann. 954(b) & (c). The employment discrimination provision of the PHRA declares only that "any employer" may be held liable. See43 Pa. Cons. Stat. Ann. 955(a).

A different section of the PHRA, however, contemplates liability that extends beyond that of Title VII. Section 955(e) forbids "any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful

discriminatory practice . . . ."  43 Pa. Cons. Stat. Ann.
955(e).  Both Brison and Monaco certainly qualify as
"person[s]" and "employee[s]" under  955(e).  The question,
then, is whether either of them may be a proper defendant under
the section for aiding and abetting the unlawful discriminatory
practices of Dici's employer.

We find that summary judgment in favor of Brison on Dici's
PHRA claim is appropriate because Brison is not a proper
defendant under  955(e).  Dici's PHRA claim against the
Appellees rests upon, as her complaint states, their failure "to
take prompt remedial measures after having notification that
discriminatory actions had occurred."  Dici has alleged no facts
that would indicate that Brison aided or abetted Dici's employer
in refusing to take prompt remedial action against any
discrimination suffered by Dici.  Rather, her complaint alleges
only direct incidents of Brison's harassment.  Such incidents are
not covered by the terms of  955(e).  As one court has said in
construing a nearly identical provision of the New Jersey Law
Against Discrimination:

> One might argue, of course, that both [the employee and
> the employer] share the "intent" to create a
> discriminatory atmosphere.  We believe, however, that
> the employer's reaction is sufficiently divorced from
> the employee's conduct that there is no community of
> purpose between them.  A non-supervisory employee who
> engages in discriminatory conduct cannot be said to
> "intend" that his employer fail to respond.

Tyson v. Cigna Corp., 918 F. Supp. 836, 841 (D.N.J. 1996).

We cannot, however, grant summary judgment to Monaco on
Dici's PHRA claim.  As Dici's supervisor, Monaco is a proper
defendant under  955(e) and might be liable for aiding and
abetting discriminatory practices, as Dici has pleaded facts
which, if true, could impose liability for violations of the
PHRA.  For example, in paragraph 14 of the complaint, Dici
states, "[a]lthough Sergeant Monaco knew or should have known
that the Plaintiff was being subject to . . . harassment . . .,
he repeatedly refused to take prompt action to end the harassment
directed at Plaintiff . . . ."  Such conduct, if proven, would
constitute aiding and abetting.

However, because Monaco cannot be held liable under Title
VII, there exists no independent jurisdictional basis to maintain
a PHRA claim against Monaco in federal court.  We, therefore,
leave it to the district court to decide whether to exercise
supplemental jurisdiction under 28 U.S.C.  1367 (1994) over
Dici's PHRA claim against Monaco.

CONCLUSION

For the foregoing reasons, we affirm in part, reverse in
part, and remand to the district court the grant of summary
judgment in favor of the Appellees.