Janet M. FRALIN, Plaintiff,

v.

COUNTY OF BUCKS, Bucks County Department of Corrections, Willis E. Morton, Warden, Kate Hodder, Clifton Mitchell, Deputy Warden, Mark Nagorski, and Robert Rosenberger, Defendants.

Civil Action No. 03–4263.

United States District Court, E.D. Pennsylvania.

Dec. 23, 2003.

David P. Bateman, Bateman & Smith, P.C., Philadelphia, PA, for Plaintiff.

Frank A. Chernak, Ballard, Spahr, Andrews & Ingersoll, LLP, Philadelphia, PA, for Defendants.

### *ORDER AND MEMORANDUM*

DuBOIS, District Judge.

### *ORDER*

**AND NOW,** this 23rd day of December, 2003, upon consideration of defendants' Motion to Dismiss Count I of the Complaint Pursuant to Fed.R.Civ.P. 12(b)(6), or, in the Alternative, For Partial Summary Judgment Pursuant to Fed.R.Civ.P. 56 (Document No. 2, filed October 3, 2003) and plaintiff's Brief in Opposition to Defendants' Motion to Dismiss Count I of the Complaint Pursuant to Rule 12(b)(6) or in the Alternative for Partial Summary Judgment Pursuant to Rule 56 (Doc. No. 3, filed October 16, 2003), **IT IS ORDERED** as follows:

1. Defendants' Motion to Dismiss Count One is **GRANTED.** Count One is **DISMISSED WITHOUT PREJUDICE** to plaintiff's right to file an amended com-

plaint asserting claims under 42 U.S.C. §§ 1983 or 1985 if warranted by the circumstances after the completion of arbitration proceedings;

2. All proceedings are **STAYED** until further order of the Court;

3. The case shall be **TRANSFERRED** to the Civil Suspense File;

4. The Clerk of Court shall **MARK** the case **CLOSED FOR STATISTICAL PURPOSES;** and

5. The Court shall **RETAIN** jurisdiction over the case and the case shall be **RETURNED** to the Court's active docket at the request of counsel after completion of the arbitration proceedings.

**IT IS FURTHER ORDERED** that the parties, through counsel, shall file and serve joint written status reports at three (3) month intervals or more frequently if warranted by the circumstances. One copy of each status report shall be served on the Court (Chambers, Room 12613) when the original is filed.

### *MEMORANDUM*

### I. *BACKGROUND*

Plaintiff Janet M. Fralin was hired by defendant County of Bucks as a Corrections Officer on October 20, 1995. Compl. 1. Defendant Bucks County Department of Corrections ("BCDOC") operates the Bucks County Correctional Facility ("BCCF") where plaintiff was assigned by BCDOC. *Id.* 1, 15. The individual defendants were also employed by BCDOC and worked at BCCF. Defendant Willis E. Morton was the facility's Warden; and defendant Clifton Mitchell was the Deputy Warden. *Id.* 4, 5. Defendant Kate Hodder was the Manager of the Women's Community Corrections Facility for BCDOC. *Id.* at 6. Defendants Robert Rosenberger and Mark Nagorski were investigators employed by BCDOC. *Id.* 7, 8.

Plaintiff claims she was threatened at BCCF by inmate Allan R. Johnson, also known as "Ocman the barber," on February 12, 2002. *Id.* 15. After plaintiff complained in writing to defendant Mitchell, defendants commenced an investigation of the incident. *Id.* 17. According to plaintiff, this investigation concluded that she "engaged in activity that 'undermined the security and orderly operation of the Bucks County Department of Corrections.'" *Id.* 17. More specifically, plaintiff claims she was charged with "inappropriate physical conduct of a sexual nature with inmate Johnson." *Id.* 19. As a result of these charges, plaintiff was placed on administrative leave with pay on March 15, 2002. *Id.* 17.

Plaintiff's employment relationship with defendant County of Bucks was governed by a collective bargaining agreement ("CBA"). *Id.* 43, 49, 64, 67. In accordance with the CBA, plaintiff instituted a grievance procedure to challenge defendants' decision to place her on administrative leave. *Id.* 18; *see also* Mot. to Dismiss at Exhibit A, Art. 22 (Agreement Between Int'l Union of Operating Eng'rs, Local 835A, and County of Bucks, Grievance Procedure and Arbitration). Pursuant to Step II of the CBA, defendant Hodder conducted an administrative disciplinary hearing on July 16, 2002, found plaintiff "guilty[,] and terminated her employment" on July 18, 2002. *Id.* 18, 38. Plaintiff alleges that this hearing deprived her of due process under the Fourteenth Amendment because, *inter alia*, defendants pressured inmates to testify against her, the hearing officer disregarded the testimony of plaintiff's witnesses, the hearing officer was biased, plaintiff was not able to cross examine or confront her accusers, her evidence was excluded because of a "specious" technicality, she was not provided with exculpatory evidence, and there was no physical evidence to support

the finding of the hearing officer. *Id.* 21, 23, 25, 26, 27, 28, 30, 42, 44, 47, 52, 55, 59. Plaintiff also claims that the hearing was scheduled in a manner that violated the CBA. *Id.* 43, 49. In addition, plaintiff claims that male corrections officers faced with similar accusations were treated differently in violation of the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S.A. §§ 951, *et seq.* For example, plaintiff claims male corrections officers were not terminated by defendants until they were "charged, admitted and/or were convicted of sexual misconduct." *Id.* 34–36.

Following the hearing and her termination, plaintiff requested and was given a level three hearing pursuant to the CBA. *Id.* 64. Plaintiff claims that during the level three hearing in September 2002 "no testimony was permitted," and the hearing officer said that he "did not intend to rehash the July 16, 2002 proceedings." *Id.* 66. In the Complaint, plaintiff also states that she "made numerous demands for arbitration pursuant to the collective bargaining agreement" but "no response has been forthcoming from the Defendants." *Id.* 67.

Plaintiff filed a two count complaint in this Court on July 22, 2003. Count One alleges that plaintiff was deprived of her constitutional rights without due process in violation of 42 U.S.C. § 1983 and 42 U.S.C. § 1985. *Id.* 76. Count Two alleges that male corrections officers facing similar accusations were treated more favorably in violation of the PHRA. *Id.* 84, 85, 87.

## II. *STANDARD OF REVIEW*

Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") provides that a defendant may respond to a pleading by raising the defense of "failure to state a claim upon which relief can be granted." Fed. R.Civ.P. 12(b)(6). In considering a motion to dismiss under Rule 12(b)(6), a court must take all well pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *See Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). Therefore, the facts alleged in plaintiffs' Complaint are accepted as true in deciding this motion. A complaint should be dismissed if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

When deciding a motion to dismiss, "courts generally consider only the allegations contained in the complaint." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). However, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Id.* Applying that rule, the Third Circuit stated in *Dykes v. Southeastern Pennsylvania Transportation Authority*, 68 F.3d 1564, 1567 n. 3 (3d Cir.1995), that a court may consider a collective bargaining agreement attached to a defendant's motion to dismiss if the plaintiff's claims are based on that document.

In the Complaint, plaintiff claims, *inter alia*, that the grievance proceedings conducted by her employer pursuant to the CBA that controlled her employment did not provide her with adequate due process protection but did not attach a copy of the CBA. Nevertheless, pursuant to *Dykes*, the Court will consider the CBA attached to defendants' Motion as Exhibit A. Mot. of Defs. to Dismiss Count I of the Compl. Pursuant to Fed.R.Civ.P. 12(b)(6), or, in the Alternative, For Partial Summ. J. Pursuant to Fed.R.Civ.P. 56 ("Mot. to Dismiss") at Exhibit A, (Agreement Between Int'l Union of Operating Eng'rs, Local 835A, and County of Bucks)

## III. *DISCUSSION*

### A. DUE PROCESS CLAIMS UNDER 42 U.S.C. §§ 1983 AND 1985 (COUNT ONE)

The Complaint does not specify whether plaintiff is asserting a substantive or procedural due process claim. On this issue, "not all property interests worthy of procedural due process protection are protected by the concept of substantive due process. Rather, to state a substantive due process claim, a plaintiff must have been deprived of a particular quality of property interest." *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 140 (3d Cir.2000) (internal quotations omitted). "[W]hether a certain property interest embodies this 'particular quality' is not determined by reference to state law, but rather depends on whether that interest is 'fundamental' under the United States Constitution." *Id.*

■ In *Nicholas*, the Third Circuit held that the right to tenured public employment was a "wholly state-created contract right" that was not fundamental under the Constitution and that the plaintiff was not entitled to substantive due process protection. *Id.* at 143. Based on *Nicholas*, this Court concludes that plaintiff in this case does not have a substantive due process claim because her right to continued employment is a state-created contract right not "fundamental" under the Constitution. *See Keim v. County of Bucks*, 275 F.Supp.2d 628, 634 (E.D.Pa.2003) (dismissing corrections officer's substantive due process claim). "In contrast, public employees who can be discharged only 'for cause' have a constitutionally protected property interest in their tenure entitling them to procedural due process protection." *Id.* Thus, the Court will treat Count One as asserting a procedural due process claim.

■ Plaintiff's procedural due process claims must be dismissed on the ground she did not exhaust the administrative remedies she challenges—she did not proceed to arbitration. "In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir.2000). "If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants." *Id.*

In *Alvin*, the Third Circuit affirmed a district court's decision to dismiss a plaintiff's § 1983 claims because the plaintiff had not followed the grievance procedures outlined in his employment handbook. *Id.* at 118. Like the plaintiff in *Alvin*, plaintiff in this case has failed to complete the administrative grievance procedure mandated by the CBA because she has not completed the arbitration required by Article 22. Compl. 67, Mot. to Dismiss at Exhibit A (Agreement Between Int'l Union of Operating Eng'rs, Local 835A, and County of Bucks).

■ Plaintiff's allegation that the initial stages of the grievance procedure were a "sham" does not excuse her from proceeding with arbitration. Br. of Pl. in Opp'n to Defs.' Mot. to Dismiss ("Br. of Pl.") at 9. It is clear that "[w]hen access to procedure is absolutely blocked or there is evidence that the procedures are a sham, the plaintiff need not pursue them to state a due process claim." *Alvin*, 227 F.3d at 118. However, "concrete evidence" that a process would be futile is required to exempt a plaintiff from invoking a "facially adequate" procedure. *Alvin*, 227 F.3d at 118. Moreover, "an allegation that initial stages of a process [have] been biased does

not mean that the later processes will be biased as well." *Id.* at 119.

■ Plaintiff's Complaint focuses on the first three steps of the grievance procedure; she has not alleged, nor can she allege, that the fourth step, arbitration, will be biased or inadequate. Plaintiff "has not brought forth evidence that [she] would not be able to use a lawyer, present evidence, or explain [her]self." *Id.* Only after completion of arbitration proceedings may plaintiff assert a procedural due process claim. To prevail on such a claim, plaintiff must prove that the arbitration was "patently inadequate." *Id.* at 116. "[W]here an adequate grievance/arbitration procedure is in place and is followed, a plaintiff has received the due process to which he is entitled under the Fourteenth Amendment." *Dykes v. Southeastern Pa. Transp. Auth.*, 68 F.3d 1564, 1565 (3d Cir. 1995), *Jackson v. Temple Univ.*, 721 F.2d 931, 933 (3d Cir.1983).

Given "the strong public and private interest in maintaining an effective grievance/arbitration process to settle disputes between employers and employees," plaintiff's due process claims must be dismissed. *Id.* at 1572. However, the dismissal is without prejudice to plaintiff's right to assert a procedural due process claim following arbitration if warranted by the circumstances.

## B. PENNSYLVANIA HUMAN RELATIONS ACT CLAIMS (COUNT TWO)

Having dismissed Count One of plaintiff's Complaint, the Court must decide whether it will retain jurisdiction over plaintiff's PHRA claim. Although not briefed by the parties, this decision raises two issues. First, is plaintiff's PHRA claim subject to arbitration under the CBA? Second, if not, should the Court retain jurisdiction over this state law claim after the only federal claim has been dismissed?

### 1. Arbitrability of PHRA Claim

[10] A discrimination claim based upon a statute, such as plaintiff's claim under the PHRA, is not subject to arbitration under a grievance procedure in a collective bargaining agreement unless plaintiff clearly and unmistakably waives her right to a judicial forum in the agreement. In *Wright v. Universal Maritime Service Corp.*, 525 U.S. 70, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998), the Supreme Court held that a union employee's waiver of a statutory right to a judicial forum for an employment discrimination claim in a collective bargaining agreement must be "clear and unmistakable." *Id.* at 80, 119 S.Ct. 391. Because the collective bargaining agreement at issue in *Wright* did not contain a specific antidiscrimination provision, the Court concluded that the "very general" arbitration clause did not waive the plaintiff's right to a judicial forum for his Americans with Disabilities Act claim. *Id.*

■ The Court concludes that plaintiff's PHRA claim in this case is not subject to arbitration under the grievance procedure provided in the CBA. This decision is based on the fact that, although the CBA in this case contains an anti-discrimination clause, it does not explicitly cover statutory claims and does not contain a clear and unmistakable waiver of plaintiff's right to a judicial forum for such claims. In *Osuala v. Community College of Philadelphia*, No. 00–98, 2000 WL 1146623 (E.D.Pa. Aug. 15, 2000), the court examined a similar collective bargaining agreement and concluded that the collective bargaining agreement did not contain "clear and unmistakable waiver language." *Id.* at *3. The ruling in *Osuala* was based on the determination that "in order to consti-

tute a clear and unmistakable waiver, a [collective bargaining agreement] must explicitly cover federal statutory claims." *Id.* at *3.

The grievance procedure and anti-discrimination clause in the CBA are practically identical to the provisions examined in *Osuala.* The CBA in this case defines a grievance as "a dispute which may arise between the parties involving the application, meaning or interpretation of this agreement and shall be settled in the manner provided in this Article." Mot. to Dismiss at Exhibit A, Art. 22 (Agreement Between Int'l Union of Operating Eng'rs, Local 835A, and County of Bucks). The collective bargaining agreement in *Osuala* defined a grievance as "a breach, violation ... or a deviation from, the terms of this Agreement or of any policy, practice, or procedure which relates to wages, hours, or working conditions" *Osuala,* 2000 WL 1146623, at *4. Both collective bargaining agreements included anti-discrimination provisions that prohibited the parties to the agreement from discriminating on the basis of "race, sex, creed, color, sex, marital status, age, national origin" or union membership. Mot. to Dismiss at Exhibit A, Art. 26; *Osuala,* 2000 WL 1146623, at *4. Neither collective bargaining agreement explicitly required the employee to arbitrate statutory discrimination claims. This Court agrees with the *Osuala* court and concludes that the CBA in this case does not include a "clear and unmistakable" waiver of plaintiff's right to a judicial forum for her PHRA claim.[1]

The arbitrability of a statutory employment discrimination claim does not hinge on whether this claim is based on federal or state law. An employment discrimination claim under Title VII, 42 U.S.C. § 2000e, *et seq.* is treated in the same manner as a similar claim under the PHRA. *Dici v. Pennsylvania,* 91 F.3d 542, 552 (3d Cir.1996). Under both statutes, an employee's waiver of a statutory right to a judicial forum for asserting an employment discrimination claim in a collective bargaining agreement must be "clear and unmistakable."

#### 2. Supplemental Jurisdiction

Plaintiff's claims under §§ 1983 and 1985 arise under the laws of the United States; therefore, this Court has original, federal question, subject matter jurisdiction over these claims. 28 U.S.C. § 1331. The Court has supplemental jurisdiction over plaintiff's state law claim because both claims arise from "a common nucleus of operative fact" relating to plaintiff's termination. 28 U.S.C. § 1367(a); *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

The Court "may decline to exercise supplemental jurisdiction" over plaintiff's PHRA claim because the only federal claim has been dismissed. 28 U.S.C. § 1367(c)(3). Although "[c]ourts should ordinarily decline to exercise supplemental jurisdiction over state law claims when the federal claims are dismissed," *Kis v. County of Schuylkill,* 866

---

1. The question of whether the *Wright* standard should be applied to plaintiff's § 1983 claim is not presently before the Court because any due process claim will not ripen until after her arbitration. "In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of processes that are available to him or her.... A due process violation is not complete when

the deprivation occurs; it is not complete unless and until the State fails to provide due process." *Alvin,* 227 F.3d at 116. On this issue, one court has held that the *Wright* standard should apply to § 1983 claims. *Schumacher v. Souderton Area Sch. Dist.,* No. 99–1515, 2000 WL 72047, *5 n. 4 (E.D.Pa. Jan. 21, 2000)

F.Supp. 1462, 1480 (E.D.Pa.1994), "[o]nce a court has decided to exercise jurisdiction over the state claim ... elimination of the federal claim does not deprive the court of the constitutional power to adjudicate the pendent claim." *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1505 (3d Cir. 1996). When deciding whether to exercise supplemental jurisdiction, a court "should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" *Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277, 1284 (3d Cir.1993) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).

 When making a decision to retain supplemental jurisdiction, a court should consider "the conservation of judicial energy and the avoidance of multiplicity of litigation." *See New Rock Asset Partners, L.P.*, 101 F.3d at 1510. Given the Court's decision to dismiss Count One without prejudice, plaintiff may file an amended complaint asserting claims under §§ 1983 or 1985 after completion of the arbitration proceedings if warranted by the circumstances. Thus, it would be more efficient for this Court to retain jurisdiction over plaintiff's PHRA claim until arbitration proceedings are complete and plaintiff decides whether it is appropriate to file an amended complaint asserting claims under §§ 1983 and 1985. In the event an amended complaint is filed, the Court will address all issues at one time. If plaintiff does not file an amended complaint, after completion of the arbitration proceedings, the Court will decide at that time whether to retain jurisdiction of the PHRA claim.

With the case in its present posture, the court deems it appropriate to stay all proceedings and transfer the case to the Civil Suspense File. Upon completion of the arbitration proceedings, counsel should request a transfer of the case to the Court's active docket for further proceedings in accordance with this Memorandum.[2]

## IV. *CONCLUSION*

For the foregoing reasons, Count One of plaintiff's Complaint is dismissed without prejudice to plaintiff's right to file an amended complaint asserting claims under § 1983 or § 1985 after arbitration. The Court retains jurisdiction over Count Two pending the completion of arbitration and plaintiff's decision regarding the filing of an amended complaint.

---

2. Arbitration is scheduled for January 12, 2004. Defs.' Mot. to Dismiss at 3, Exhibit B

¶ 8 (Declaration of Carmen Thome), Pl.'s Brief in Opp'n at 2.