570 A.2d 612

**AT & T COMMUNICATIONS OF PENNSYLVANIA, INC., Petitioner,**

**v.**

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

**MCI TELECOMMUNICATIONS CORPORATION, Petitioner,**

**v.**

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 15, 1989.

Decided Feb. 15, 1990.

392

James H. Cawley, with him, John J. Gallagher, LeBoeuf, Lamb, Leiby & MacRae, of counsel: Kenneth L. Demarest, for petitioner, AT & T Communications of Pa., Inc.

Lloyd R. Persun, Mette, Evans & Woodside, for petitioner/intervenor, MCI Tele–Communications of Pennsylvania, Inc.

Donna Stanek Zehner, Asst. Counsel, with her, Frank B. Wilmarth, Deputy Chief Counsel, and John F. Povilaitis, Chief Counsel, for respondent.

Debra M. Kriete, Asst. Consumer Advocate, with her, Daniel Clearfield, Sr. Asst. Consumer Advocate and David M. Barasch, Consumer Advocate, for intervenor, Consumer Advocate.

Before CRUMLISH, Jr., President Judge, and CRAIG, DOYLE, COLINS, PALLADINO, McGINLEY and SMITH, JJ.

CRAIG, Judge.

Where the Pennsylvania Public Utility Commission initially orders that an ad hoc committee resolve conflicting interpretations under 52 Pa.Code § 64.22(2) for a local telephone exchange carrier's role in interexchange customer billing inquiries, and, by later action, rejects the committee's interpretation and recommended proposal, is the initial

order (in 1988) interlocutory, and thus not a final, appealable order as of right because that order did not put the aggrieved parties "out of court?"

Also, does Title I of the federal Communications Act of 1934, 47 U.S.C. § 153(a) (Act), preempt the commission's authority to regulate customer billing inquiries in order to protect consumers from unwarranted service suspensions for failure to pay interexchange charges to the local exchange carrier, which performs both intrastate and interstate customer billing services for the interexchange carriers?

AT & T Communications of Pennsylvania (AT & T) and MCI Telecommunications of Pennsylvania (MCI) (collectively "the interexchange carriers" or "IXCs") present these questions in their petitions for review from the commission's later June 27, 1989 decision to deny the IXCs' request for an evidentiary hearing, in which the commission initially denied, and instead, adopted a proposal from the Office of Consumer Advocate (OCA) to establish an ad hoc committee to develop a proposed interpretation of § 64.22(2) and solution to the petition's issues.

### *History*

On August 27, 1984, the commission promulgated regulations governing billing practices for residential telephone services. These regulations are set forth at 52 Pa.Code §§ 64.1–.213 (Chapter 64). Section 64.22 of these regulations states that:

A local exchange carrier may provide billing services for interexchange carriers under the following conditions:

(1) The local exchange carrier purchases the account receivable prior to billing for the service.

(2) The local exchange carrier assumes responsibility for settling *disputes* [1] involving accounts receivable which it purchases.

1. Section 64.2 defines "dispute" as follows:
 A disagreement between an applicant, a customer, or a customer's designee and a local exchange carrier with respect to the application

(3) The local exchange carrier applies its deposit rules. (Emphasis added.)

When the unified Bell Telephone System was divided into independent regional companies in 1984, AT & T's centralized billing system ceased. Because AT & T began offering intrastate services in Pennsylvania, AT & T initially subscribed to the billing and collections services of Bell of Pennsylvania (Bell or the "LEC"). However, based on AT & T and Bell's interpretation of § 64.22(2), AT & T assumed responsibility for its own IXC customer inquiries, installed a toll-free "800" inquiry telephone number, and obtained permission from Bell to have this toll-free telephone number put on customer bills sent by Bell, who billed for AT & T as well as itself. This practice continued through 1987.

In 1987, an agreement between AT & T and Bell continued the publication of the "800" telephone number on customer bills sent by Bell. The commission's Bureau of Consumer Services (BCS) participated in developing procedures enabling a LEC, when receiving customer inquiries on IXC charges, to channel these inquiries to the IXC.

However, after developing these procedures, BCS requested that all disputes involving IXC charges should be handled solely by the LEC, and not channelled to the IXC. BCS further stated that it would be inappropriate to list the IXC's customer inquiry telephone number on billing.

In a February 19, 1988 letter to Bell, the commission stated its interpretation of § 64.22 as follows:

As we discussed, it is the Commission's position that the interexchange carrier's telephone number should *not* appear on the bill for billing inquiry or dispute purposes, according to 52 Pa.Code § 64.22. All billing inquiry, reporting, investigation and/or dispute resolutions should

of this chapter—including, but not limited to—credit determinations, deposit requirements, the accuracy of amounts billed, or the proper party to be charged. If at the conclusion of an initial inquiry, the customer or the customer's designee indicates satisfaction with the resulting resolution or explanation, the contact will not be considered a dispute.

be handled by Bell of PA, not the interexchange carrier. (Emphasis in original.)

Bell agreed to comply with the commission's interpretation, but requested six months to prepare for such compliance.

On May 31, 1988, AT & T filed a petition with the commission, which sought a formal evidentiary hearing to determine a proper interpretation of § 64.22(2), so that AT & T could address the adverse effects of the BCS's interpretation of the regulation. AT & T supported its petition on the fact that it had an operational system in place to deal with IXC customer inquiries, and thus shifting the responsibility to Bell would cause substantial cost increases for AT & T's customers.

MCI filed an answer in support of AT & T's petition. OCA also filed an answer, which suggested that a committee, comprised of BCS, LEC, IXC, and OCA representatives, discuss and resolve the issues raised in AT & T's petition. OCA's answer also stated that:

> To the extent that the Committee is able to develop a proposed solution to the problem, the need to hold a record proceeding to resolve this matter may be eliminated. If the Committee is unable to resolve the issue satisfactorily, the [commission] could then require the scheduling of hearings or a comment/reply comment procedure.

On November 29, 1988, the commission adopted OCA's proposal, stating that:

> We believe the time is right to revisit the issue of the interexchange carrier's ability to interact with customers for inquiry and dispute purposes. We do not find, however, that the institution of formal generic investigation proceedings into the issue is either necessary or in the public interest *at this time*. (Emphasis added.)

The commission's order initially denied the IXCs request for an evidentiary hearing, established a committee on the matter, and implemented a six-month waiver on compliance with § 64.22.

On April 27, 1989, the commission amended § 64.22, commenting as follows:

> § 64.22 *Billing service for interexchange carriers*— The existing requirement in subsection (1) that a LEC purchase the account receivable of the interexchange carrier prior to providing billing service for the interexchange carrier was deleted. With the deletion of subsection (1), the phrase "which it purchases" in subsection (2) must also be deleted since purchasing the account receivable is no longer required.

19 Pa.B. 3043 (1989).

After deliberations, the committee proposed a nine-month trial program in which the LEC would list the IXCs' customer inquiry telephone number on billing. However, at its June 27, 1989 public meeting, the commission, by a 2–2 tie vote, rejected the committee's proposal without issuing a formal order.

AT & T filed a reconsideration petition, requesting that the commission (1) hold evidentiary hearings on the matter, (2) adopt the nine-month program and consider the results in a formal investigation, (3) extend the temporary waiver of § 64.22(2) pending a formal investigation and hearing and until a fifth commissioner is able to cast a vote on the matter, or (4) find that the regulation of billing and collection services, specifically billing inquiry services, is preempted by the Act. MCI filed a similar petition, and on July 20, 1989, the commission, again by a 2–2 tie vote, denied the reconsideration petitions without issuing a formal order.

On July 24, 1989, AT & T filed a petition for review with this court, and MCI followed with its own petition on July 28, 1989. On August 24, 1989, a consent order of this court stayed the proceedings and continued the commission's waiver of compliance with § 64.22 pending disposition of the matter. The commission then filed a motion to quash

the IXCs' petitions on October 30, 1989. We consolidated both matters for disposition.[2]

### Motion to Quash

The commission initially seeks to quash the IXCs' petitions, contending that the November 29, 1988 order was a final, appealable order, and thus the petitions are untimely under Pa.R.A.P. 1512(a)(1).

In determining an order's finality, the pivotal question is whether the order puts the aggrieved party "out of court." *Sweener v. First Baptist Church,* 516 Pa. 534, 539, 533 A.2d 998, 1000 (1987). In general, an order is final if it ends the litigation, or, alternatively, disposes of the entire case, *Vanmetre v. Unemployment Compensation Board of Review,* 128 Pa.Commonwealth Ct. 644, 564 A.2d 540 (1989), and thus precludes the aggrieved party from presenting the merits of his or her claim to the tribunal. *Peoples Natural Gas Co. v. Pennsylvania Public Utility Commission,* 124 Pa.Commonwealth Ct. 59, 555 A.2d 288 (1989).

Moreover, determining an order to be "final" for appeal purposes is a judicial conclusion which results from practical rather than technical interpretation, *Bruno v. Elitzky,* 515 Pa. 47, 526 A.2d 781 (1987), taking into account the order's ramifications. *O'Reilly v. Fox Chapel Area School District,* 106 Pa.Commonwealth Ct. 516, 527 A.2d 581 (1987), *aff'd,* 521 Pa. 471, 555 A.2d 1288 (1989).

In the present case, the commission, in adopting the OCA's proposal to resolve the matter, stated that "[W]e agree with the OCA's proposal and would modify it only to the extent of including representation from the Commission's Law Bureau and extending an invitation to the Penn-

2. Our scope of review of a decision of the commission is limited to determining whether any constitutional rights were violated, any errors were committed, or whether substantial evidence supports the commission's findings, determination, or order. *SME Bessemer Cement v. Pennsylvania Public Utility Commission,* 116 Pa.Commonwealth Ct. 13, 540 A.2d 1006 (1988).

sylvania Utility Law Project to participate on the committee." Although paragraph 1 of the commission's order denied the IXCs' request for a evidentiary hearing, paragraph 2 stated that "... [C]onsistent with the foregoing discussion in the body of this order, an ad hoc committee shall be established to study the issues raised in the AT & T petition...."

Because the practical ramifications of the commission's November 29, 1988 order did not put the IXCs "out of court," but simply delegated the duty to interpret § 64.22(2) to a committee, and because OCA's proposal, adopted by the commission's initial order, preserved the possibility of a future evidentiary hearing on the matter, we conclude that the order was not a final, appealable order under Pa.R.A.P. 1512(a)(1).

■ The commission further contends that, because it issued no order in rejecting the committee's proposal and the IXCs' reconsideration motions, no final, appealable order exists under section 763(a) of the Judicial Code, 42 Pa.C.S. § 763(a) and Pa.R.A.P. 1512(a)(1).

■ However, where a party requests an administrative body to take action on a matter, a tie vote by the body is equivalent to a refusal of the action. *Pennsylvania Publications v. Pennsylvania Public Utility Commission*, 152 Pa.Superior Ct. 279, 32 A.2d 40 (1943), *rev'd on other grounds*, 349 Pa. 184, 36 A.2d 777 (1944). Also, where an administrative body issues no formal written order to a party's request for action, but does vote on the request, the vote constitutes a de facto order subject to appeal. *City of Pittsburgh v. Pennsylvania Public Utility Commission*, 171 Pa.Superior Ct. 391, 90 A.2d 850 (1952). "Appellate review of Commission action cannot be precluded by subterfuge or by the form in which such action is evidenced. Moreover, administrative action cannot violate the fundamental principles of fairness any more that it can impinge on any constitutional right." *City of Pittsburgh*, 171 Pa. Superior Ct. at 395–96, 90 A.2d at 852.

Because the commission's June 27, 1989 denial of the committee's proposal put the IXCs "out of court," *Sweener,* we conclude that the commission's denial is a final, appealable order under Pa.R.A.P. 1512(a)(1) and § 763(a) of the Judicial Code; thus, we deny the commission's motion to quash.

## Preemption Issue

■ The IXCs contend that the Act preempts the commission's authority to regulate billing inquiry services because the LEC provides both intrastate and interstate services for the IXCs.

■ The Act preempts state regulatory action over intrastate telephone service only when the state regulation negates the FCC's exercise of authority over interstate communication. *Louisiana Public Service Commission v. Federal Communication Commission,* 476 U.S. 355, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986); *see also National Association of Regulatory Utility Commissioners v. Federal Communication Commission,* 880 F.2d 422 (D.C.Cir.1989).

Both AT & T and MCI rely on *In re Detariffing of Billing and Collection Services,* 102 F.C.C.2d 1150 (1986), *rehearing denied,* 1 F.C.C. Record 445 (1986) to support their contention.

In *Detariffing Order,* the FCC preempted state rate regulation of LEC billing and collection services provided for interstate service for the IXC, stating that "[S]tate rate regulation of such billing and collection services is not required to protect interstate interexchange carriers and their customers from excessive billing and collection charges and might lead to excessive charges that would tend to frustrate the goals of the Communications Act." *Detariffing Order,* 102 F.C.C.2d at 1177.

Moreover, in *Detariffing Order,* the FCC stated that "[B]illing and collection, in this context, refers to a service provided by a local exchange carrier to an interexchange carrier whereby the former bills and collects from end users

for services provided to end users by the [interexchange carrier.] More specifically, this service includes ... *handling customer inquiries ....*" *Detariffing Order*, 102 F.C.C.2d at 1151 n. 2. (Emphasis added.)

However, the FCC's decision in *Detariffing Order* does not specifically address the question of whether an IXC's customer inquiry telephone number may be placed on the LEC's bill. Although *Detariffing Order* precludes the states from regulating *rates for billing and collection services*, the decision does not preempt the commission's authority to regulate *customer billing inquiries and service problems*, such as service suspensions issued by the LEC for a customer's failure to pay IXC charges.

Moreover, the FCC clarified its preemption position in *In the Matter of the Public Service Commission of Maryland*, 4 F.C.C. Record 4000 (1989), stating that:

[I]t is our view that we have the authority to preempt state regulation of the terms and conditions under which DNP [disconnection for nonpayment] will be allowed to take place, as distinguished from the charges applied to it, on the ground that it is "not possible to separate interstate and the intrastate components of the assessed FCC regulation." Instead of exerting our preemptive to the fullest extent of our jurisdiction, however, we have, in the *Detariffing Order*, deferred to the states, allowing them to decide whether and under what circumstances LECs will be allowed to offer DNP service to interstate carriers. We have carefully limited our preemptive action to *billing and collections charges* that are assessed on interstate services and that will be indirectly reflected in IXC revenue requirements for services that are regulated by this Commission. (Emphasis added.)

*In the Matter of the Public Service Commission of Maryland*, 4 F.C.C. Record at 4006.

Because the Act only preempts state rate regulation of billing and collection services performed by the LEC for the IXCs, *Detariffing Order*, and because the FCC has vested authority in the states to regulate conditions in which the

LEC may disconnect service due to a customer's failure to pay IXC charges, *In the Matter of the Public Service Commission of Maryland,* we conclude that the Act does not preempt the commission's authority to regulate customer inquiry services provided by the LEC for the IXCs.

### Procedural Due Process Issue

 The IXCs next contend that, in denying an evidentiary hearing on the petition, the commission violated the constitutional right to due process.

In *Barasch v. Pennsylvania Public Utility Commission,* 119 Pa.Commonwealth Ct. 81, 546 A.2d 1296 (1988), this court set forth the requirements for procedural due process before an administrative agency. Specifically, where the matter involves a substantial property right and the agency's action constitutes an "adjudication," the agency must provide notice of its action and the opportunity to hear challenges to that action. *Barasch,* 119 Pa.Commonwealth Ct. at 101, 546 A.2d at 1305.

According to the commission's interpretation of § 64.22(2), the LEC provides the actual customer billing inquiry service for the IXCs, involving significant start-up and annual expenses for the LEC. Each IXC then compensates the LEC for this service, and thus the IXCs would pass this expense on to its consumers. Thus, in this case, as in *Barasch,* substantial property rights were involved because increased customer cost could result from the commission's action.

Moreover, as in *Barasch,* the commission's action in this case, which rejected the committee's recommendation and denied the right to an evidentiary hearing on the IXCs' petition, was an "adjudication" because the decision affected the rights, duties, and obligations of both AT & T and Bell under their service agreement which the BCS, and later, the commission, interpreted, without an evidentiary hearing, as violating § 64.22.

Because the commission's action was adjudicatory in nature and involved substantial rights of the IXCs' customers, the only question remaining is what process is due.

As this court stated in *Barasch*, "[T]he Public Utility Code contains provisions ... allowing any person to complain to the commission with regard to any regulation or order of the commission that the complainant is required to observe, and providing for a public hearing on such complaints, with notice and the making of a full and complete record. 66 Pa.C.S. §§ 701–703." *Barasch*, 119 Pa.Commonwealth Ct. at 102, 546 A.2d at 1306.

Moreover, section 504 of the Administrative Agency Law (Law), 2 Pa.C.S. § 504, provides that "[N]o adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard. All testimony shall be stenographically recorded and a full and complete record shall be kept of the proceedings." Also, section 505 of the Law states that "[R]easonable examination and cross-examination shall be permitted."

Because the commission failed to provide an evidentiary hearing on the IXCs' petitions seeking a proper interpretation of § 64.22(2), we reverse the commission's June 27, 1989 decision, and remand this matter on the merits to the commission to conduct evidentiary hearings into whether § 64.22(2) permits a LEC to list an IXC's customer inquiry telephone number on bills issued by the LEC.

### Conclusion

Accordingly, we reverse the commission's June 27, 1989 decision, and remand this matter to the commission.

### ORDER

(Nos. 1410 C.D.1989 and 1444 C.D.1989)

NOW, February 15, 1990, (1) the Pennsylvania Public Utility Commission's motion to quash the petitions for review of AT & T Communications of Pennsylvania and MCI

Telecommunications of Pennsylvania is denied, and (2) the June 27, 1989 decision of the commission, which denied AT & T and MCI's request for an evidentiary hearing to determine a proper interpretation of 52 Pa.Code § 64.22(2), after the commission, on November 29, 1988, at Docket No. P–880306, initially ordered an ad hoc committee to interpret § 64.22(2) and resolve the matter, is hereby reversed.

We remand this matter to the commission to conduct evidentiary hearings to determine a proper interpretation of § 64.22(2) and its application in this matter.

Jurisdiction relinquished.