**ANSERPHONE, INC., a corporation, Plaintiff,**

v.

**BELL ATLANTIC CORPORATION, a corporation; and Bell–Atlantic Pennsylvania, a corporation, Defendants.**

Civil Action No. 95–1301.

United States District Court, W.D. Pennsylvania.

Nov. 25, 1996.

John E. Nickoloff, Library, PA, for Plaintiff.

Jeffrey J. Leech and John E. Graf, Tucker Arensberg, P.C., Pittsburgh, PA, for Defendants.

## MEMORANDUM OPINION

BLOCH, District Judge.

Presently before the Court is defendants' motion for summary judgment. For the reasons set forth in this opinion, this Court will grant defendants' motion in part and deny it in part.

### I. Background

#### A. Procedural history

Plaintiff brought this action against defendants, Bell Atlantic Corporation (Bell Atlantic) and its subsidiary, Bell Atlantic–Pennsylvania (Bell–PA), by filing a Praecipe for Writ of Summons in the Court of Common Pleas of Allegheny County, Pennsylvania, on July 16, 1993.[1] After plaintiff filed its complaint alleging that defendants violated § 2 of the Sherman Act, 15 U.S.C. § 2, and engaged in other tortious conduct, defendants removed this action to this Court based upon the federal question jurisdiction conferred by plaintiff's Sherman Act claim. Following this Court's order dated December 14, 1995, which granted in part and denied in part defendants' motion to dismiss, the following claims remained: (1) Count I alleging a violation of § 2 of the Sherman Act against both defendants; (2) Count II alleging breach of the duty of good faith and fair dealing against Bell–PA; and (3) Count VI alleging tortious interference with prospective and existing contractual relations against both defendants.

#### B. Factual background[2]

1. Where appropriate, Bell Atlantic and Bell–PA will be referred to collectively as "defendants."

2. In accordance with applicable precedent, the facts have been viewed in the light most favorable to plaintiff and, where defendants' evidence contradicts the plaintiff's, this Court has accepted plaintiff's evidence as true for purposes of deciding this motion.

■ Plaintiff is engaged in the business of providing telephone answering services, primarily to business customers. As a provider of answering services, plaintiff employs live operators around the clock to receive its customers' telephone calls which have been electronically forwarded to plaintiff. To utilize plaintiff's services, plaintiff's customers must forward their calls through the use of defendants' "call-forwarding services."

■ Beginning in the mid-1980's, plaintiff began receiving a number of complaints from its customers, including, but not necessarily limited to, the following: (1) the call-forwarding services for some of plaintiff's customers were completely ceasing to work; (2) calls for some of plaintiff's customers were being sent to other answering companies; (3) numerous calls from clients of plaintiff's customers would disconnect after one ring; (4) many incoming calls contained the wrong identification number, thereby causing plaintiff's employees to answer with the wrong greeting; and (5) plaintiff's customers' clients often received a greeting informing them that their dialing attempt had failed.[3] Plaintiff complained to Bell–PA about these problems, and Bell–PA took certain steps to ameliorate plaintiff's concerns. Dissatisfied with what plaintiff perceived to be Bell–PA's inadequate response, however, plaintiff filed a complaint with the Pennsylvania Public Utilities Commission (PUC).[4] The PUC heard evidence on the matter and found that plaintiff had not offered sufficient evidence to prove the existence of some of its complaints, while ordering Bell–PA to take certain actions with regard to other of the plaintiff's complaints.

Meanwhile, Bell–PA entered the answering services market in March, 1991, when it introduced Voice Mail and Answer Call to the public in the Pittsburgh, Pennsylvania area. Voice Mail and Answer Call provide answering services via electronic recordings, similar to a home answering machine. Plaintiff has proffered evidence demonstrating that when Bell–PA first entered the answering services market, it aggressively marketed these services and ignored certain safeguards meant to prevent Bell–PA from soliciting plaintiff's customers.

Currently, plaintiff's customers continue to experience problems with their telephone services and, as a result, some of plaintiff's customers have stopped using plaintiff's answering services.

## II. Summary judgment standard

■ Although at one time the Supreme Court endorsed a stricter standard when a summary judgment motion involved an antitrust claim, the standard to be applied today is the same as with any other type of action. See, e.g., Ideal Dairy Farms, Inc. v. John Labatt, Ltd., 90 F.3d 737, 747–48 (3d Cir. 1996) (citing Eastman Kodak Co. v. Image Technical Services, Inc., 504 U.S. 451, 468–69, 112 S.Ct. 2072, 2082–83, 119 L.Ed.2d 265 (1992)).

■ Summary judgment may be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

---

**3.** Defendants contend that this Court must not consider certain hearsay statements offered by plaintiff in opposition to defendants' motion for summary judgment. (See defendants' reply brief at 6). However, the rule in the Third Circuit is that "hearsay statements can be considered on a motion for summary judgment if they are capable of being admissible at trial," i.e., if the proponent presumably will be able to produce the speaker themselves at trial. Stelwagon Manufacturing Co. v. Tarmac Roofing, 63 F.3d 1267, 1275 n. 17 (3d Cir.1995), cert. denied, — U.S. —, 116 S.Ct. 1264, 134 L.Ed.2d 212 (1996). There-

fore, this Court has considered plaintiff's hearsay statements under the presumption that plaintiff will be able to produce its customers at trial.

**4.** Plaintiff, along with another answering service from Eastern Pennsylvania, Elite Answering Service, filed a complaint with the PUC charging that Bell–PA had provided them with inadequate service in violation of Pennsylvania public utility law. This action was assigned docket No. C–892636.

party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion. *Big Apple BMW, Inc. v. BMW of North America, Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied,* 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993); *International Raw Materials, Ltd. v. Stauffer Chemical Co.,* 898 F.2d 946, 949 (3d Cir.1990). Moreover, the Court must draw all reasonable inferences in favor of the non-moving party. *Big Apple BMW,* 974 F.2d at 1363. Thus, if the non-moving party's evidence contradicts the movant's, the Court must accept the non-movant's evidence as true. *Country Floors, Inc. v. Partnership Composed of Gepner and Ford,* 930 F.2d 1056, 1061 (3d Cir. 1991).

The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 896 (3d Cir.) (en banc), *cert. dismissed,* 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that "the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Id.; Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

The non-moving party "must set forth specific facts showing a genuine issue for trial and may not rest upon mere allegations, general denials, or ... vague statements." *Quiroga v. Hasbro, Inc.,* 934 F.2d 497, 500 (3d Cir.), *cert. denied,* 502 U.S. 940, 112 S.Ct. 376, 116 L.Ed.2d 327 (1991). *See also Pastore v. Bell Telephone Company of Pennsylvania,* 24 F.3d 508, 511 (3d Cir.1994) ("[T]he non-moving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact.").

*III. Discussion*

Defendants argue that summary judgment under Fed.R.Civ.P. 56 is appropriate because, defendants contend, plaintiff cannot prove the essential elements of any of its claims. In the alternative, defendants contend that the applicable statutes of limitations and the doctrine of collateral estoppel mandate that partial summary judgment be granted in favor of defendants.

This Court has concluded that summary judgment in favor of defendants is appropriate with regard to Count I of plaintiff's complaint, that is, plaintiff's Sherman Act claims against both defendants. In addition, this Court will grant summary judgment in favor of defendant Bell Atlantic with regard to Count VI of plaintiff's complaint, that is, plaintiff's claims of tortious interference with prospective and existing contractual relations. This Court will also grant summary judgment in favor of defendant Bell–PA with regard to plaintiff's claim of tortious interference with prospective contractual relations only. Finally, partial summary judgment in favor of defendants will be granted with regard to application of the pertinent statutes of limitations on plaintiff's claims of breach of the duty of good faith and fair dealing (Count II) and tortious interference with existing contractual relations (Count VI). The Court will now discuss each of plaintiff's claims.

*A. Sherman Act*

In Count I of its complaint, plaintiff asserts a claim against defendants under § 2 of the Sherman Act, 15 U.S.C. § 2. This statute provides:

> Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $10,000,000 if a corporation, or, if any other person, $350,000, or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court.

15 U.S.C. § 2. Section 15 of the Sherman Act provides a private civil right of action for treble damages to any person injured in his business or property by reason of any violation of § 2 of the Sherman Act. *See* 15 U.S.C. § 15.

■ "To survive a summary judgment motion on its Sherman Act § 2 monopolization claim, [plaintiff must] show that (1) [defendants] possessed monopoly power in the relevant market, and that (2) [defendants] willfully acquired and maintained monopoly power and did not acquire its monopoly share due to 'growth or development as a consequence of a superior product, business acumen, or historical accident.'" *Ideal Dairy*, 90 F.3d at 749 (*quoting Bonjorno v. Kaiser Aluminum and Chemical Corp.*, 752 F.2d 802, 808 (3d Cir.1984), *cert. denied*, 477 U.S. 908, 106 S.Ct. 3284, 91 L.Ed.2d 572 (1986)). *Accord Fineman v. Armstrong World Industries, Inc.*, 980 F.2d 171, 197 (3d Cir.1992), *cert. denied sub nom.*, 507 U.S. 921, 113 S.Ct. 1285, 122 L.Ed.2d 677 (1993) (*quoting United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966)). To prove the essential elements of its attempted monopolization claim, plaintiff must present concrete evidence that (1) defendants engaged in predatory or anticompetitive conduct with (2) specific intent to monopolize and with (3) a dangerous probability of achieving monopoly power. *Ideal Dairy*, 90 F.3d at 750 (*citing Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 454–58, 113 S.Ct. 884, 889–92, 122 L.Ed.2d 247 (1993)). *See also Pastore*, 24 F.3d at 512; *Fineman*, 980 F.2d at 197–98; *Pennsylvania Dental Association v. Medical Service Association of Pennsylvania*, 745 F.2d 248, 260–61 (3d Cir.1984), *cert. denied*, 471 U.S. 1016, 105 S.Ct. 2021, 85 L.Ed.2d 303 (1985).

■ First, defendants argue that summary judgment is appropriate because there is no genuine issue of material fact with regard to defendants' participation in the relevant market. Specifically, defendants contend that the relevant market in this case is live operator answering services and that defendants offer only automated voice message services which electronically record messages from outside callers for later playback. Because defendants do not offer any live operating services, defendants argue that their complete lack of market share precludes plaintiff's claims under the Sherman Act. In making this argument, defendants rely upon the following language contained in this Court's Memorandum Opinion dated December 14, 1995:

[A] complete reading of the plaintiffs' complaint indicates that the relevant market is telephone answering services in the Commonwealth of Pennsylvania.... Defendants also contend that the plaintiffs fail to specify the type of telephone answering service—live operator, voice mail, or home answering machines. However, a full reading of the complaint clearly indicates that the live operator answering service, the type offered by plaintiff Anserphone, is what is involved in this case.

(Memorandum opinion, December 14, 1995, at p. 5).

■ Defendants, however, misconstrue this Court's language. Live operator answering services, like those offered by plaintiff, are certainly involved in this case. However, it does not necessarily follow that the relevant market is limited to live answering services. As plaintiff correctly asserts, the Third Circuit has defined "relevant market" for purposes of the Sherman Act as "those commodities reasonably interchangeable by consumers for the same purposes." *Fineman*, 980 F.2d at 198 (internal quotation omitted) (*citing Tunis Brothers Co. v. Ford Motor Co.*, 952 F.2d 715, 722 (3d Cir.1991), *cert. denied*, 505 U.S. 1221, 112 S.Ct. 3034, 120 L.Ed.2d 903 (1992)). *See also United States v. E.I. du Pont de Nemours and Co.*, 351 U.S. 377, 395, 76 S.Ct. 994, 1007–08, 100 L.Ed. 1264 (1956) ("In considering what is the relevant market for determining the control of price and competition, no more definite rule can be declared than that commodities reasonably interchangeable by consumers for the same purposes make up that 'part of the trade or commerce,' monopolization of which may be illegal."). In determining the relevant market, "[f]actors to be considered include price, use and qualities." *Fineman*, 980 F.2d at 198; *du Pont de Nemours*, 351 U.S. at 404, 76 S.Ct. at 1012. It is, therefore, quite possible that a reasonable jury could find that the services offered by defendants are reasonably interchangeable with those offered by plaintiff. *See Fineman*, 980 F.2d at 199 ("determination of a relevant market or sub-

market ... is a highly factual one best allocated to the trier of fact") (*citing Weiss v. York Hospital*, 745 F.2d 786, 825 (3d Cir. 1984), *cert. denied*, 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985)). Accordingly, defendants are not entitled to summary judgment on the basis that they did not participate in the live operator answering services market.

 Defendants also argue that summary judgment is appropriate because plaintiff has failed to produce any evidence with regard to defendants' market share in *any* relevant market. It is true that "[m]onopoly power has been defined as 'the power to control prices or exclude competition and may ordinarily be inferred from a predominant share of the relevant market.' " *Fineman*, 980 F.2d at 201 (*quoting du Pont de Nemours*, 351 U.S. at 391, 76 S.Ct. at 1004–05). In addition, "a lesser market share combined with other relevant factors[ ] may suffice to demonstrate monopoly power." *Id.* (*citing Weiss*, 745 F.2d at 827 n. 72).

 Although this Court agrees that defendants are entitled to summary judgment due to plaintiff's failure to produce evidence of defendants' monopoly power, or dangerous probability of obtaining monopoly power, this Court notes that a defendant's market share is not the exclusive approach to assessing the presence or absence of such monopoly power. *See Barr Laboratories, Inc. v. Abbott Laboratories*, 978 F.2d 98, 112 (3d Cir.1992) (*citing Pennsylvania Dental Association*, 745 F.2d at 260). "Other factors to be considered include the strength of competition, probable development of the industry, the barriers to entry, the nature of the anti-

competitive conduct, and the elasticity of consumer demand." *Id.* (*citing International Distribution Centers, Inc. v. Walsh Trucking Co., Inc.*, 812 F.2d 786, 792 (2d Cir.), *cert. denied*, 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987)).

 This Court finds that plaintiff has proffered no evidence to support a finding of defendants' monopoly power, or dangerous probability of achieving monopoly power, in any relevant answering services market either through proof of defendants' market share or with regard to other relevant factors as identified by the Third Circuit. In its brief, plaintiff addresses this issue by discussing Bell–PA's alleged anti-competitive conduct (*see* plaintiff's reply brief at 6–10), and arguing that a jury could "infer an intent on the part of defendants to totally dominate the answering service market." *Id.* at 9. However, the Supreme Court has made clear that a § 2 Sherman Act claim requires proof of the defendants' market power and that such power may not be inferred from defendants' predatory conduct. *See Spectrum Sports*, 506 U.S. at 459, 113 S.Ct. at 892 ("[D]emonstrating the dangerous probability of monopolization in [a § 2 Sherman Act] attempt case ... *requires* inquiry into the relevant product and geographic market *and* the defendant's economic power in that market.") (emphasis added). *See also Ideal Dairy*, 90 F.3d at 750 (quoting same).[5]

 Plaintiff argues, however, that an inquiry into defendants' market power is not necessary where the plaintiff demonstrates "proof of actual 'detrimental effects.' " (*See* plaintiff's brief at 7 (*citing Fineman*, 980

**5.** The closest plaintiff comes to demonstrating defendants' market power is an assertion in the affidavit of Joy Galeza that "[i]t is my belief, upon review of [a map produced by defendants], that the defendants provide telephone services to well over 60% of the residents of the Commonwealth of Pennsylvania." (Galeza affidavit, May 6, 1996, at ¶ 17). First, Galeza's statement and the map prove nothing with regard to the extent of defendants' market share in answering services, as opposed to telephone services. Second, assuming that the defendants' market power with regard to telephone services in Pennsylvania is relevant, plaintiff's evidence does not constitute concrete evidence of monopoly power. For instance, the map purporting to show defen-

dants' service areas in Pennsylvania completely excludes the Philadelphia area, a locality known to be highly populated. While it is possible that defendants provide telephone service to over 60% of the residents of Pennsylvania, it is just as likely that defendants serve significantly less Pennsylvania residents. *Cf. Ideal Dairy*, 90 F.3d at 749 (plaintiff's extrapolation that defendant controlled a large share of the relevant market in Northern New Jersey from estimate of defendant's market share throughout the State of New Jersey was not sufficient to prove monopolist power). Plaintiff's evidence, therefore, simply cannot suffice to demonstrate defendants' economic power, either in the telephone services market or in the answering services market.

F.2d at 202 (*citing Federal Trade Commission v. Indiana Federation of Dentists,* 476 U.S. 447, 106 S.Ct. 2009, 90 L.Ed.2d 445 (1986)). This Court is not persuaded by plaintiff's argument. *Indiana Federation* held that in applying a rule of reason analysis to alleged horizontal restraint under § 1 of the Sherman Act, which bars contracts or conspiracies in restraint of trade, it is unnecessary to look to a defendant's market power if the challenged arrangement has actual "detrimental effects" to competition or is a "naked restraint" on trade. *See Indiana Federation,* 476 U.S. at 460–61, 106 S.Ct. at 2018–19. However, in *Spectrum Sports,* the Supreme Court stated that "single firm activity is unlike concerted activity covered by § 1 [of the Sherman Act], which 'inherently is fraught with anticompetitive risk.' For these reasons, § 2 makes the conduct of a single firm unlawful only where it actually monopolizes or dangerously threatens to do so." *Spectrum Sports,* 506 U.S. at 459, 113 S.Ct. at 892. *See also Fineman,* 980 F.2d at 205 ("Section 1 prohibits 'restraints of trade' accomplished by means of concerted action; Section 2 prohibits more severe monopoly and attempted monopoly resulting from unilateral action. As these distinctions make clear, the Sherman Act ... does not prescribe anti-competitive unilateral conduct that falls shy of threatened monopolization."). Accordingly, this Court rejects plaintiff's argument that it need not demonstrate defendants' economic power in the relevant market under a § 2 monopoly or attempted monopoly claim.

 Moreover, even assuming that detrimental effects alone may support a § 2 Sherman Act claim, plaintiff has produced no evidence of any such anti-competitive effects, such as reduction of output, increase in price, or deterioration in quality of goods or services. *See United States v. Brown University,* 5 F.3d 658, 668 (3d Cir.1993). Although plaintiff has proffered evidence to demonstrate that defendants' alleged acts, or inaction, caused its own business harm, plaintiff has not offered any evidence to demonstrate harm to competition at large. *See Fineman,* 980 F.2d at 187 (plaintiff alleging antitrust violation must demonstrate harm to competition at large and antitrust injury) (*citing Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 486, 97 S.Ct. 690, 696, 50 L.Ed.2d 701 (1977)).[6]

Plaintiff's Sherman Act claims, therefore, will survive summary judgment only in the event that plaintiff has proffered sufficient evidence to demonstrate a genuine issue of material fact with regard to defendants' alleged liability under the "essential facilities" doctrine. In order to establish liability under the essential facilities doctrine, the plaintiff must prove (1) control of the essential facility by a monopolist; (2) a competitor's inability practically or reasonably to duplicate the essential facility; (3) the denial of the use of the facility to the competitor; and (4) the feasibility of providing access to the facility. *Ideal Dairy,* 90 F.3d at 748. *See also Advanced Health–Care Services v. Radford Community Hospital,* 910 F.2d 139, 150 (4th Cir.1990) (*citing MCI Communications v. American Telephone & Telegraph,* 708 F.2d 1081, 1132–33 (7th Cir.1983), *cert. denied,* 464 U.S. 891, 104 S.Ct. 234, 78 L.Ed.2d 226 (1983)).

 Defendants argue that plaintiff has offered no evidence to demonstrate that defendants ever denied access to Bell–PA's telephone facilities to any answering service, and, therefore, that summary judgment in defendants' favor is appropriate. In contrast, plaintiff's argument regarding this doctrine is that plaintiff was "constructively" denied access to defendants' facilities. Regarding this theory, plaintiff directs the Court to evidence of defendants' alleged failures to adequately address the problems plaintiff's customers were having with defendants' call-forwarding services. (*See* plain-

---

6. Plaintiff also urges this Court to deny defendants' motion for summary judgment with regard to its Sherman Act claims based upon a "leveraging theory." (*See* plaintiff's brief at 5–6). Under this theory, a defendant violates the Sherman Act when it uses its monopoly power in one market to gain monopoly control over other markets. *See, e.g., Fineman,* 980 F.2d at 198. However, "in order to prevail upon a theory of monopoly leveraging [under the Sherman Act], a plaintiff must prove threatened or actual monopoly in the leveraged market." *Id.* at 206. As discussed above, plaintiff has failed to proffer any evidence to support such a finding.

tiff's brief at 11). However, this Court concludes that such a "constructive denial" is insufficient to prove antitrust liability as a matter of law. Specifically, this Court is guided by the recent decision of the Third Circuit Court of Appeals in *Ideal Dairy*.

In *Ideal Dairy*, a locally owned dairy in New Jersey sued a large Canadian corporation, its affiliates, and several New Jersey dairies purchased by the Canadian corporation, alleging, *inter alia*, claims under § 2 of the Sherman Act. The defendant in *Ideal Dairy* had purchased the supplier from which the plaintiff purchased processed milk, and with which the plaintiff had entered into a pricing contract. However, shortly after the plaintiff's supplier was purchased by the defendant, the supplier allegedly began to overcharge plaintiff in violation of the pricing contract. Plaintiff, however, begrudgingly continued to pay the high prices because defendant owned all the dairies capable of handling plaintiff's dairy supply needs. The Third Circuit affirmed the district court's grant of summary judgment in favor of defendant on plaintiff's essential facilities Sherman Act claim, holding that the facts in the record demonstrated that "almost five years after realizing that [defendant] was overcharging it, [plaintiff's] business was still located on the premises of [defendant]," and that, therefore, the plaintiff "was not denied use of [defendant's] facilities." *Id.* at 748.

Similarly, the present record shows that plaintiff in the instant case was not denied the use of defendants' facilities. Although plaintiff claims that the services provided by defendants were poor, like the plaintiff in *Ideal Dairy* who complained of overpriced services, plaintiff in the instant case cannot prove the third element of an essential facilities claim, that is, that defendants denied the use of its facility to a competitor.

Accordingly, this Court will grant summary judgment in favor of defendants on Count 1 of plaintiff's complaint.

B. *Intentional interference with existing and prospective contractual relations*

1. *Intentional interference with existing contractual relations as against Bell–PA*

■ Under Pennsylvania law, the elements of the tort of intentional interference with existing contractual relations are: (1) the existence of a contract between the plaintiff and a third party; (2) the purpose or intent to harm the plaintiff by interfering with the relationship; (3) the absence of privilege or justification on the part of the actor; and (4) the occurrence of actual harm or damage to the plaintiff as a result of the actor's conduct. *Glenn v. Point Park College*, 441 Pa. 474, 272 A.2d 895, 898 (1971).

■ Examining the facts in a light most favorable to the plaintiff, this Court concludes that genuine issues of material fact exist, which, if resolved in favor of the plaintiff, may support a finding of liability on plaintiff's existing contractual relations claim as against Bell–PA. Therefore, summary judgment is inappropriate on this portion of plaintiff's claim as against defendant Bell–PA only.

2. *Intentional interference with prospective contractual relations as against Bell–PA*

■ Regarding plaintiff's claim of interference with prospective contractual relations as against Bell–PA, plaintiff has failed to identify any prospective contracts which were allegedly interfered with by defendants. The Third Circuit has stated:

> To prove [a] claim[ ] of tortious interference with prospective contractual relations, plaintiff[ ] ... must prove, *inter alia*, the existence of prospective contracts. A prospective contract is something less than a contractual right, something more than a mere hope; it exists if there is a reasonable probability that a contract will arise from the parties' current dealings.

*Alvord–Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996, 1014–15 (3d Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1691, 131 L.Ed.2d 556 (1995) (internal quotations and citations omitted). Because plaintiff has offered no evidence to demonstrate the existence of any prospective contracts, this Court will grant summary judgment in favor of Bell–PA on plaintiff's claim of tortious interference with prospective contractual relations. *Compare id.* at 1015 (summary judgment appropriate where plaintiff fails to

identify with sufficient precision contracts interfered with by defendants or that plaintiff would have entered into contracts with third party but for defendants' alleged interference) *with Big Apple BMW*, 974 F.2d at 1380–82 (summary judgment in favor of defendants reversed where plaintiff had identified transactions in which it claimed that defendants' actions had deprived it of specific automobile dealership franchises).

### 3. Interference with prospective and existing contractual relations as against Bell Atlantic

■ With regard to plaintiff's claims of intentional interference with prospective and existing contractual relations as against Bell Atlantic, defendants argue, and this Court agrees, that plaintiff has failed to produce any evidence in support of finding Bell Atlantic liable. As noted previously, Bell Atlantic is the parent company of Bell–PA, the company with which plaintiff had disputes concerning telephone services. Plaintiff does not allege that Bell Atlantic took any action to interfere with plaintiff's existing and/or prospective contracts. Therefore, Bell Atlantic could incur liability on these claims only if the corporate separateness of Bell Atlantic and Bell–PA were disregarded by application of the "alter ego" theory to pierce the corporate veil. *See, e.g., Nobers v. Crucible, Inc.,* 602 F.Supp. 703, 706 (W.D.Pa.1985) (*citing Publicker Industries, Inc. v. Roman Ceramics Corp.,* 603 F.2d 1065, 1069 (3d Cir.1979)).

■ The only evidence presented to this Court in support of finding Bell Atlantic liable for the alleged actions of its subsidiary is plaintiff's position that, because of the parent-subsidiary relationship, Bell Atlantic knew or should have known about Bell–PA's alleged conduct.[7] The Court does not know of any theory of law which would support holding a parent company liable for the ac-

tions of its subsidiary simply because of the parent-subsidiary relationship. Because plaintiff has failed to offer any evidence regarding actions taken by Bell Atlantic which would support a finding of liability and, further, because plaintiff has not set forth any basis for disregarding the corporate structure of the two defendants, this Court will grant summary judgment in favor of Bell Atlantic on Count VI of plaintiff's complaint.

### C. Breach of the duty of good faith and fair dealing

■ Defendant Bell–PA asks this Court to grant summary judgment in its favor with regard to Count II of plaintiff's complaint, which sets forth a cause of action based upon an alleged breach of the duty of good faith and fair dealing. However, upon examination of the pleadings, briefs and accompanying exhibits, and viewing the facts in a light most favorable to the plaintiff, this Court concludes that there are genuine issues of material fact in dispute. Therefore, summary judgment is precluded on this claim.

### D. Statute of limitations

Defendants move for partial summary judgment as to all claims, alleging that plaintiff may only recover for harm sustained within the relevant statutes of limitations periods. Specifically, defendants argue that the relevant time frame regarding plaintiff's breach of the duty of good faith and fair dealing claim is July 16, 1989 to the present, and that the relevant time frame regarding plaintiff's intentional interference with contractual relations claim is July 16, 1991 to the present.[8] Plaintiff does not respond to defendants' statute of limitations' arguments.

### 1. Breach of the duty of good faith and fair dealing

---

7. This evidence is presented by defendants, who direct the Court to the deposition testimony of Joy Galeza, manager of plaintiff Anserphone. Plaintiff's brief does not address defendants' argument that plaintiff has not proffered any evidence or theory of law in support of finding Bell Atlantic liable. Therefore, this Court assumes that plaintiff does not oppose defendants' characterization of Galeza's testimony.

8. Defendants also allege that the relevant time frame regarding plaintiff's Sherman Act claim is July 14, 1991, four years prior to plaintiff's filing of its complaint, to the present. However, because this Court has decided that summary judgment in favor of defendants is appropriate with regard to plaintiff's Sherman Act claims, defendants' statute of limitations' argument with regard to this claim is rendered moot and will not be addressed by this Court.

A claim for breach of the duty of good faith and fair dealing is a species of a contract claim. *See, e.g., Kaplan v. Cablevision of PA., Inc.,* 448 Pa.Super. 306, 671 A.2d 716, 721–22 (1996), *appeal denied,* —— Pa. ——, 683 A.2d 883 (1996) ("every contract imposes on each party a duty of good faith and fair dealing in its performance and enforcement") (*quoting* Restatement (Second) of Contracts § 205). Pennsylvania law imposes a four-year statute of limitations on all contract claims which commences when the contract is breached. 42 Pa.C.S.A. § 5525. Defendants argue, therefore, that plaintiff may not recover for actions which occurred prior to July 16, 1989, four years prior to plaintiff's filing of a praecipe for writ of summons in the Court of Common Pleas of Allegheny County on July 16, 1993. *See Horowitz v. Horowitz,* 411 Pa.Super. 21, 600 A.2d 982, 985 (1991) (permitting recovery only for damages suffered within statutory period on continuing contract). Having been presented with no evidence to the contrary, this Court agrees that plaintiff is bound by the four-year statute of limitations on its breach of the duty of good faith and fair dealing claim.

Therefore, partial summary judgment in favor of defendants will be granted to the extent that defendants seek to limit the recovery of plaintiff on this claim, if any, to the time period commencing July 16, 1989.

### 2. Intentional interference with contractual relations

Pennsylvania law limits a claim for intentional interference with contractual relations to a two-year statute of limitations time period. *See* 42 Pa.C.S.A. § 5524; *Torchia v. Keystone Foods Corp.,* 431 Pa.Super. 83, 635 A.2d 1082, 1086 (1993), *appeal denied,* 537 Pa. 666, 644 A.2d 1203 (1994). Defendants argue, therefore, that plaintiff may not recover for actions which occurred prior to July 16, 1991, two years prior to plaintiff's filing of a praecipe for writ of summons in the Court of Common Pleas of Allegheny County on July 16, 1993. Having been presented with no evidence to the contrary, this Court agrees that plaintiff is bound by the two-year statute of limitations on its tortious interference with existing contractual relations claim.

Therefore, partial summary judgment in favor of defendants will be granted to the extent that defendants seek to limit the recovery of plaintiff on this claim, if any, to the time period commencing July 16, 1991.

### E. Collateral estoppel

As a final matter, defendants ask this Court to grant partial summary judgment precluding plaintiff from raising in the instant case any of the grievances plaintiff alleged against Bell–PA in a complaint filed with the PUC in 1989. Specifically, defendants have asked the Court to give collateral estoppel effect to the findings of an administrative law judge as adopted by the PUC in its opinion and order dated March 23, 1993. These findings pertain to the adequacy of certain of defendants' services and facilities as provided to plaintiff.

"[O]nce a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Dici v. Commonwealth of Pennsylvania,* 91 F.3d 542, 547 (3d Cir.1996) (*quoting Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414–15, 66 L.Ed.2d 308 (1980)). This is the doctrine of collateral estoppel, or issue preclusion.

As a preliminary matter, this Court agrees with the defendants that the principles of collateral estoppel can be applied to administrative proceedings such as the one at issue. *See University of Tennessee v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986); *Chisholm v. Defense Logistics Agency,* 656 F.2d 42, 46 (3d Cir. 1981) ("[T]he same policy reasons which underlie use of collateral estoppel in judicial proceedings are equally applicable when the administrative board acts as an adjudicatory body."). However, issue preclusion applies, whether the issue was decided by an administrative body or by a judicial forum, only if the following four conditions are met: (1) the issue decided in the prior adjudication was identical with the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea

is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action. *See, e.g., Dici,* 91 F.3d at 548 (*citing Safeguard Mutual Insurance Co. v. Williams,* 463 Pa. 567, 345 A.2d 664, 668 (1975); *see also Popowsky v. Pennsylvania Public Utility Commission,* 166 Pa.Cmwlth. 690, 647 A.2d 302, 305 (1994).

 Applying these principles to the facts of this case, the Court finds that it would be inappropriate to give preclusive effect to the administrative findings at issue. Specifically, the Court finds that the PUC decision was not a final judgment on the merits. To be final and appealable, the judgment or order must end the litigation, dispose of the entire case, or effectively put the litigant out of court. *Popowsky,* 647 A.2d at 305 (*citing Eachus v. Chester County Tax Claim Bureau,* 148 Pa.Cmwlth. 625, 612 A.2d 586 (1992)). The finality of an order is a judicial conclusion which results from practical rather than technical interpretation, taking into account the order's ramifications. *Id.* (*citing AT & T Communications of Pennsylvania, Inc. v. Pennsylvania Public Utility Commission,* 131 Pa.Cmwlth. 390, 570 A.2d 612 (1990)). An indication that an order is not final is conditional language and a failure to advise that appeal rights must be exercised. *Id.* (*citing Lehigh Township v. Department of Environmental Resources,* 154 Pa.Cmwlth. 647, 624 A.2d 693 (1993)).

In the present case, the order of the PUC directed, *inter alia,* defendant Bell–PA to undertake certain activities, including the design and implementation of test procedures, and to make and file a report with the PUC regarding the status of the testing ordered. (*See* PUC order at 47–48). In addition, the order directed the presiding administrative law judge to retain jurisdiction of the matter for monitoring purposes. (*Id.* at 48–49). This order, by its terms, contemplated continuing litigation. The order did not adjudicate the ultimate rights and liabilities of the parties, nor did it end the litigation, dispose of the entire case, or effectively put the litigants out of court. Therefore, the PUC's order of March 25, 1993, was not a final

judgment on the merits and the doctrine of collateral estoppel does not apply.

Furthermore, the issues presented in this case are not identical to those presented in the PUC proceedings. These differences are particularly relevant in light of the Third Circuit's holding that "[o]nly where the two actions promote similar policies will the two issues be identical for purposes of issue preclusion." *Dici,* 91 F.3d at 551 (*citing Swineford v. Snyder County, Pennsylvania,* 15 F.3d 1258, 1267–68 (3d Cir.1994)).

 This Court finds that the Pennsylvania Public Utility Commission law, on the one hand, was designed to insure the adequacy, efficiency, safety and reasonableness of public utility services. *See Elkin v. Bell Telephone Co. of Pennsylvania,* 491 Pa. 123, 420 A.2d 371, 374–75 (1980). In contrast, the aim of antitrust laws is to promote vigorous competition. *See, e.g., Sunshine Books, Ltd. v. Temple University,* 697 F.2d 90, 92 (3d Cir.1982) (*citing Gordon v. New York Stock Exchange, Inc.,* 422 U.S. 659, 689, 95 S.Ct. 2598, 2614–15, 45 L.Ed.2d 463 (1975)).

Moreover, the procedures utilized in PUC hearings differ from those employed in federal court. For example, "[a]ny oral or documentary evidence may be received ..." by a PUC administrative law judge. *See* 66 Pa. C.S.A. § 332(b).

Thus, for the aforesaid reasons, and given the Third Circuit's admonition that "[r]easonable doubt as to what was decided by a prior judgment should be resolved against using it as an estoppel ...," *Dici,* 91 F.3d at 551 (*quoting Kauffman v. Moss,* 420 F.2d 1270, 1274 (3d Cir.), *cert. denied,* 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970)), this Court will deny defendants' motion for summary judgment with regard to the collateral estoppel effect of the prior PUC administrative hearing.

*F. Supplemental jurisdiction*

 As a consequence of the decision to grant defendants' motion for summary judgment in part, this Court must determine whether to retain supplemental jurisdiction over plaintiff's remaining state law claims.

Under 28 U.S.C. § 1367(c), the district court "may decline to exercise supplemental jurisdiction over a claim" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). As a general rule, the Court should decline to exercise supplemental jurisdiction over state law claims where all of the federal claims have been dismissed. *Heller v. CACL Federal Credit Union*, 775 F.Supp. 839, 843 (E.D.Pa.1991). The Court, however, is afforded broad discretion to decide whether to decline the exercise of supplemental jurisdiction under such circumstances. *Newman v. Burgin*, 930 F.2d 955, 963 (1st Cir.1991) (*citing Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988)). In deciding whether to retain jurisdiction of a pendent state law claim following dismissal of federal claims, the district court should consider generally accepted principles of judicial economy, convenience and fairness to the litigants. *Growth Horizons, Inc. v. Delaware County, Pennsylvania*, 983 F.2d 1277, 1285 (3d Cir. 1993). " '[I]f the dismissal of the main claim occurs late in the action, . . . knocking [the dependent claims] down with a belated rejection of supplemental jurisdiction may not be fair.' " *Id.* (*quoting* David D. Segal, *Practice Commentary*, appended to 28 U.S.C. § 1367).

Based upon the current duration of this lawsuit and the imminent trial, the Court will exercise supplemental jurisdiction over plaintiff's remaining claims.

*III. Conclusion*

For the reasons set forth above, this Court will grant summary judgment in favor of defendants with respect to: (1) plaintiff's Sherman Act claim (Count I); (2) plaintiff's claim of intentional interference with prospective contractual relations with regard to both defendants (Count VI); (3) plaintiff's claim of intentional interference with existing contractual relations with regard to defendant Bell Atlantic only (Count VI); and (4) limitation of liability under the pertinent statutes of limitations with regard to plaintiff's claims of breach of the duty of good faith and fair dealing (Count II) and intentional interference with existing contractual relationships (Count VI). Defendants' mo-

tion for summary judgment will be denied in all other respects. Specifically, defendants' motion will be denied with respect to plaintiff's claim of breach of the duty of good faith and fair dealing against Bell–PA (Count II); plaintiff's claim of intentional interference with existing contractual relationships against Bell–PA (Count VI); and with regard to the collateral estoppel effect of the March, 1993 PUC opinion and order.